*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-16841 |
| | ) | Superior Court No. 3AN-17-02138 PR |
| LINDA M. | ) ) | O P I N I O N |
| | ) | |
| | ) | No. 7346 – March 22, 2019 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Laurence Blakely, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Linda M. David T. Jones, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for State of Alaska.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

MAASSEN, Justice.

## I.      INTRODUCTION

The district court found that a woman charged with several misdemeanors was incompetent to stand trial and committed her to a state hospital. The hospital later brought petitions in the superior court for civil commitment and involuntary medication. The woman moved to dismiss or stay the proceedings, contending that the superior court was an improper forum because of the criminal case pending in the district court. The

superior court denied the motion, asserted its jurisdiction to hear the case, and granted the hospital's petition for authority to administer medication.

The woman appealed. We hold that the superior court properly asserted its jurisdiction over the civil commitment and involuntary medication petitions and that the superior court did not err in finding that involuntary medication was in the woman's best interests. We therefore affirm the superior court's orders.

## II.     FACTS AND PROCEEDINGS

Linda M.[1] was charged with several misdemeanor criminal offenses. The district court found her incompetent to stand trial and, pursuant to AS 12.47.110, ordered that she be committed to the Alaska Psychiatric Institute (API) for restoration of competency. The commitment order noted that "Defendant may not be involuntarily medicated pursuant to this order." The commitment was to last 90 days unless Linda was rendered competent earlier or the criminal charges were otherwise "disposed of according to law."

Linda entered API in late July 2017. While there she hit and spat on staff members and hit another patient, leading API to believe she was likely to cause harm to herself or others. On August 9 API filed a petition to have Linda civilly committed for 30 days under AS 47.30.730, even though she could not leave API in any event because of the competency commitment order in her criminal case. API also petitioned for authority under AS 47.30.839 to medicate Linda, without her consent, with chlorpromazine (Thorazine) and diphenhydramine. These petitions were filed in the superior court, the venue specified by the civil commitment statutes.[2]

---

[1]     We use a pseudonym to protect the party's privacy.

[2]     *See* AS 47.30.730(a) (authorizing petitions for 30-day commitments to be filed in court); AS 47.30.839 (authorizing petitions for involuntary medication to be filed

(continued...)

Linda objected and moved to dismiss or stay the superior court proceedings, arguing that any decisions about medication should be made by the district court overseeing the competency commitment in her criminal case. A hearing was set for August 23.

On August 17 API filed an emergency motion for an order authorizing the administration of crisis medication, asserting a high likelihood of situations requiring the "immediate use of medication in order to preserve the life of, or prevent significant physical harm to, [Linda] or another person"[3] before the scheduled hearing. Linda again raised her objection to the superior court's jurisdiction and contested the medication petition on its merits, arguing that API had made an insufficient showing that involuntary medication was necessary.

The superior court held an emergency hearing on August 18 and took testimony from Linda's treating psychiatrist, Dr. Michael Alexander. Dr. Alexander testified that Linda had already been put on crisis medication three times; each time she had spit on a nurse and once she had punched another patient in the face. Dr. Alexander opined that the only alternative to administering medication was to leave Linda in a locked room and hope she would calm down on her own. The superior court, after some consideration, denied Linda's procedural arguments at least on an emergency basis and granted the emergency motion for crisis medication.

At the August 23 hearing, the superior court returned to the procedural motion, denied it, then turned to the merits of the involuntary medication petition. The

---

[2] (...continued)
in court); AS 47.30.915(3) (defining "court" as "superior court").

[3] *See* AS 47.30.838(a)(1).

court heard from the court visitor,[4] who testified that Linda was incapable of giving informed consent because she did not accept her diagnosis of schizophrenia and was incapable of rationally participating in treatment decisions. The court visitor did believe, however, that Linda's objections to the medication based on her pregnancy were reasonable.

Dr. Alexander again testified, describing Linda's diagnosis of schizophrenia and his plan for involuntary medication. He testified that Linda had "ongoing" and "persistent" paranoia and delusions that would not go away without medication. He testified that Thorazine was the best medication for her because she had successfully taken it in the past without side effects and that other, similar medications had "a greater risk of causing ongoing problems for both her and for the child." Linda then testified on her own behalf, describing what she believed to be the side effects of the medication and asserting mistreatment by API staff and her parents, involving, among other things, putting excess gluten in her food and implanting metal in her body so they could track her by computer.

The superior court found by clear and convincing evidence that Linda had a mental illness — schizophrenia — and that because of it she was substantially likely to harm herself or others if not treated. It found that she was incapable of giving or withholding informed consent to treatment, that it was in her best interests that she be treated with Thorazine as Dr. Alexander proposed, and that there were no available less intrusive means to adequately treat her. The court therefore authorized involuntary medication of Linda in both crisis and non-crisis situations.

Linda appeals both the superior court's ruling that it had jurisdiction over the medication petition and its decision to grant that petition.

---

[4]     *See* AS 47.30.839(d).

## III. STANDARD OF REVIEW

We decide de novo questions of statutory[5] and constitutional[6] interpretation and jurisdiction.[7] " 'Factual findings in involuntary commitment or medication proceedings are reviewed for clear error,' and we reverse those findings only if we have a 'definite and firm conviction that a mistake has been made.' "[8] However, "[w]hether those findings meet the . . . statutory requirements is a question of law we review de novo."[9]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Hearing The Civil Commitment And Involuntary Medication Petitions.

Linda contends that the superior court erred when it denied her request to dismiss or stay civil commitment and involuntary medication proceedings; she argues that the only proper forum for such proceedings was the district court in which the criminal case was pending. She contends that under *Sell v. United States*[10] the court in the criminal case must consider the question of involuntary medication "even [if it is sought] for reasons other than [competency] restoration"; that Alaska's competency statute does not contemplate the commencement of civil commitment proceedings during

---

[5]     *In re Hospitalization of Jacob S.*, 384 P.3d 758, 764 (Alaska 2016).

[6]     *State v. Alaska Civil Liberties Union*, 978 P.2d 597, 603 (Alaska 1999).

[7]     *Barlow v. Thompson*, 221 P.3d 998, 1001 (Alaska 2009).

[8]     *In re Jacob S.*, 384 P.3d at 763-64 (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375 (Alaska 2007), *overruled in part on other grounds by In re Hospitalization of Naomi B.*, ____ P.3d ____, Op. No. 7328 at 19, 2019 WL 167223, at *8 (Alaska Jan. 11, 2019)).

[9]     *Id.*

[10]     539 U.S. 166 (2003).

the criminal commitment; and that allowing simultaneous criminal and civil proceedings will result in various practical problems. We disagree.

In *Sell* the United States Supreme Court required a court in a criminal case to make four essential findings before it could order an incompetent defendant to undergo involuntary medication for the purpose of restoring competency: (1) "that important governmental interests are at stake"; (2) "that involuntary medication will significantly further those concomitant state interests"; (3) "that involuntary medication is necessary to further those interests"; and (4) "that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his [or her] medical condition."[11] The Court emphasized that this four-part test applied *only* when the trial court was considering whether involuntary medication was necessary to significantly "further a particular governmental interest, namely, the interest in rendering the defendant competent to stand trial."[12] "[I]f forced medication is warranted for a *different* purpose, such as the purposes set out in [*Washington v.*] *Harper* related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk," then whether medication is warranted to restore competency need not even be considered.[13] The Court noted that "courts typically address involuntary medical treatment as a civil matter, and justify it on these alternative, *Harper*-type grounds," citing as one example Alaska's statutes for the appointment of guardians with the authority to make medical decisions for

---

[11]     *Id.* at 180-81 (emphases omitted).

[12]     *Id.* at 181 (emphasis omitted).

[13]     *Id.* at 181-82 (emphasis in original) (citing *Washington v. Harper*, 494 U.S. 210, 225-26 (1990)).

incapacitated persons.[14]  "If a court authorizes medication on these alternative grounds, the need to consider authorization on trial competence grounds will likely disappear."[15] A court that is asked to approve involuntary medication for competency purposes should therefore "ordinarily determine whether the Government seeks, or has first sought, permission for forced administration of drugs on these other *Harper*-type grounds; and, if not, why not."[16]

*Sell* thus explicitly contemplates that, despite pending criminal charges, a state may seek authority to involuntarily medicate a committed defendant for reasons other than the defendant's competency to stand trial.  The standards for granting such authority in Alaska are well defined:

> [T]he State must prove — by clear and convincing evidence — "that the committed patient is currently unable to give or withhold informed consent regarding an appropriate course of treatment" and that the patient never refused such treatment while previously competent.  If the court determines that the patient is not competent to make the decision, the court must next determine whether the medication is in the patient's best interests.[17]

Factors the court is required to consider in determining the patient's best interests in this context include the "*Myers* factors":

---

[14]     *Id.* at 182 (citing former AS 13.26.105(a) (2002) (renumbered as AS 13.26.221(a)); former AS 13.26.116(b) (2002) (renumbered as AS 13.26.226(b))).

[15]     *Id.* at 183.

[16]     *Id.*

[17]     *In re Hospitalization of Jacob S.*, 384 P.3d 758, 769-70 (Alaska 2016) (quoting *Myers v. Alaska Psychiatric Inst.*, 138 P.3d 238, 243 (Alaska 2006)); *see also* AS 47.30.836(3), AS 47.30.839(g).

(A) an explanation of the patient's diagnosis and prognosis, or their predominant symptoms, with and without medication;

(B) information about the proposed medication, its purpose, the method of its administration, the recommended ranges of dosages, possible side effects and benefits, ways to treat side effects, and risks of other conditions, such as tardive dyskinesia;

(C) a review of the patient's history, including medication history and previous side effects from medication;

(D) an explanation of the interactions with other drugs, including over-the-counter drugs, street drugs, and alcohol; and

(E) information about alternative treatments and their risks, side effects, and benefits, including the risks of nontreatment.[18]

Additional best interest factors the court is encouraged, but not required, to consider — the so-called "Minnesota factors" — include:

(1) the extent and duration of changes in behavior patterns and mental activity effected by the treatment; (2) the risks of adverse side effects; (3) the experimental nature of the treatment; (4) its acceptance by the medical community of the state; and (5) the extent of intrusion into the patient's body and the pain connected with the treatment.[19]

Whether the patient is competent to stand trial — that is, whether a criminal defendant is able "to understand the proceedings against the defendant or to assist in the

---

[18] *In re Hospitalization of Naomi B.*, ___ P.3d ___, Op. No. 7328 at 32, 2019 WL 167223, at *14 (Alaska Jan. 11, 2019) (quoting *Myers*, 138 P.3d at 252); *see also* AS 47.30.837(d)(2).

[19] *Id.* at 33, *14 (quoting *Myers*, 138 P.3d at 252). These additional factors are "derived from a ruling of the Supreme Court of Minnesota." *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 180 (Alaska 2009); *see Price v. Sheppard*, 239 N.W.2d 905, 913 (Minn. 1976).

defendant's own defense"[20] — does not appear among these factors and plays no part in the best-interests determination relevant to civil commitment.

Linda argues, however, that *Sell* anticipates that it will be the criminal court deciding whether there are competency or non-competency grounds for involuntary medication — implying that the criminal court would be sensitive to the prospect of forced competency. But we do not read *Sell* as requiring consolidation of criminal and civil mental health proceedings in a single court; indeed, *Sell* did not address consolidation at all, as the case before the Court involved only the government's request in the criminal proceeding to medicate the defendant in order to render him competent to stand trial.[21] Whether there is one court or two, *Sell* makes clear that its four-part inquiry is relevant only to a determination of competency in a criminal case.[22] And, as noted above, the *Sell* Court's reference to state civil commitment procedures, and its advice that courts look for "alternative, *Harper*-type grounds" for involuntary medical treatment, strongly imply its approval of the "separate, confidential civil proceeding" that Linda argues is inconsistent with *Sell*.[23]

Linda also argues that Alaska's statutes contemplate sequential processes, in which a civil commitment proceeding will commence "only after the resolution of competency in the criminal context." Linda points out that AS 12.47.110(b) allows competency commitments for two successive 90-day periods, after which, if the

---

[20]    AS 12.47.110(a).

[21]    *Sell v. United States*, 539 U.S. 166, 169-75 (2003).

[22]    *Id.* at 181-82.

[23]    *Id.* at 182 ("There are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds *before* turning to the trial competence question." (emphasis in original)).

defendant has not been restored to competency, "the charges against the defendant shall be dismissed without prejudice, and continued commitment of the defendant shall be governed by the provisions relating to civil commitments under AS 47.30.700 – 47.30.915" absent unusual circumstances.[24] But AS 12.47.110, while contemplating the need for sequential proceedings, presents no bar to concurrent proceedings. The statute envisions an end to a competency commitment that has failed to reach its goal: restoring the defendant to competency for purposes of standing trial in a criminal case. The statute recognizes the possibility that the defendant should remain hospitalized for reasons justifying civil commitment: that is, that the defendant "is mentally ill and that condition causes the [defendant] to be gravely disabled or to present a likelihood of serious harm to self or others."[25] But incompetency to stand trial and mental illness for purposes of civil commitment may have coexisted all along.[26] Commitment to treat the two conditions may be sequential, or the commitments may be concurrent or overlap if each is independently justified. Indeed, we would not expect API to have to wait until a court has decided under AS 12.47.110 that a defendant's competency cannot be restored before petitioning for civil commitment based on the patient's serious mental illness, risking a gap in the authority to provide necessary treatment.

---

[24] AS 12.47.110(b). The court may extend the commitment period for another six months if "the defendant is charged with a crime involving force against a person and the court finds that the defendant presents a substantial danger of physical injury to other persons and that there is a substantial probability that the defendant will regain competency within a reasonable period of time." *Id.*

[25] AS 47.30.700(a).

[26] They are sometimes presumed to be coextensive: "A defendant charged with a felony and found to be incompetent to proceed under this section is rebuttably presumed to be mentally ill and to present a likelihood of serious harm to self or others in proceedings under AS 47.30.700 – 47.30.915." AS 12.47.110(e).

Nonetheless, based on her view that the State may commence civil commitment proceedings only when "the criminal court's jurisdiction over the defendant's commitment expires," Linda asks us to hold that the State must seek civil relief "in the criminal court that ordered the defendant committed." A problem with this approach is that the criminal court — in this case the district court — may not have the jurisdiction to order the necessary treatment. Only the civil commitment statutes address involuntary medication, and under those statutes only the superior court may authorize it. Alaska Statute 47.30.839 allows "[a]n evaluation facility or designated treatment facility [to] seek court approval for administration of psychotropic medication to a patient by filing a petition with the court." For purposes of that provision, " 'court' means a superior court of the state."[27] The superior court — the only court with jurisdiction to do so — must be able to entertain an involuntary medication petition despite the fact that a district court has committed the defendant for competency purposes.

Linda also contends that allowing parallel competency and civil commitment proceedings "may undermine the resolution of competency in the criminal matter and cause other practical problems." She argues that medicating a defendant as authorized in a civil commitment proceeding "affects the defendant's mental state and the defendant's competency in the criminal case"; she states that "[t]reatment for restoration is not separate and distinct from treatment for general wellbeing." But she provides no medical support for these statements, either generally or as to Linda specifically. Treatment directed toward the symptoms of mental illness may or may not affect a defendant's competency to stand trial. *Sell* specifically recognizes the

---

[27] AS 47.30.915(3).

difference,[28] as do Alaska's statutes.[29]

Finally, Linda argues — though without significant legal analysis — that her rights "to assistance of counsel and due process in the criminal case[]" are violated if the State is allowed to initiate a separate civil commitment case without some guarantee that both the criminal court and her defense counsel in the criminal case will be notified of it. She argues that when the criminal court is considering whether to order medication to restore competency, it needs to know about "medication administered for other purposes." The question is academic in this case, since, as discussed above, the district court lacks jurisdiction to order involuntary medication.[30] In any event, competency commitments, civil commitments, and authorizations to involuntarily medicate a patient all require evidentiary hearings at which the petitioner — typically the

---

[28]    *Sell*, 539 U.S. at 182 (recognizing that "medical experts may find it easier to provide an informed opinion about whether, given the risk of side effects, particular drugs are medically appropriate and necessary to control a patient's potentially dangerous behavior (or to avoid serious harm to the patient himself) than to try to balance harms and benefits related to the more quintessentially legal questions of trial fairness and competence"); *id.* at 185 ("Whether a particular drug will tend to sedate a defendant, interfere with communication with counsel, prevent rapid reaction to trial developments, or diminish the ability to express emotions are matters important in determining the permissibility of medication to restore competence, . . . but not necessarily relevant when dangerousness is primarily at issue.").

[29]    *See* AS 12.47.110(d) ("A defendant receiving medication for either a physical or a mental condition may not be prohibited from standing trial, if the medication either enables the defendant to understand the proceedings and to properly assist in the defendant's defense or does not disable the defendant from understanding the proceedings and assisting in the defendant's own defense.").

[30]    *See* AS 47.30.839(b) (authorizing petitions for involuntary medication to be filed in court); AS 47.30.915(3) (defining "court" as "superior court").

State — bears the burden of proof.[31]  We are given no reason to believe that the petitioner's witness — often a treating healthcare provider[32] — would not be in a position to testify about all medications and other treatments being administered, regardless of their purpose.

As for notice to defense counsel, Linda argues generally that her rights to counsel and due process will be at risk unless "notice of the commitment proceeding, and an opportunity to be heard, [are] provided to the criminal defense attorney."  She asks that we at least impose a requirement of formal notice, pointing out that defense lawyers cannot depend on their clients for information about parallel proceedings:  "[C]riminal defendants frequently object personally to being found incompetent and may not want their criminal defense attorney to know about a civil commitment proceeding."  Linda's counsel in the civil case argued that she and Linda's criminal defense lawyer lacked access to the full records of each other's cases, though she conceded they had spoken about the civil commitment.  Lack of notice to defense counsel was thus not at issue in this case.  We decline to decide a constitutional challenge that is purely theoretical and

---

[31]    *See* AS 12.47.110(a), (b) (competency hearings); AS 47.30.735 (30-day commitment hearings); AS 47.30.755(a) (90-day commitment hearings); AS 47.30.839(e)-(g) (court-ordered administration of medication hearings).

[32]    *See, e.g.*, *In re Hospitalization of Naomi B.*, ___ P.3d ___, Op. No. 7328 at 3-4, 2019 WL 167223, at *1-2 (Alaska Jan. 11, 2019) (involving involuntary commitment based in part on testimony of treating psychiatrist); *In re Hospitalization of Paige M.*, S-16834, 2018 WL 6718593, at *1 (Alaska Dec. 21, 2018) (involving involuntary commitment based on testimony of treating psychologist); *In re Hospitalization of Darren M.*, 426 P.3d 1021, 1023-24 (Alaska 2018) (involving involuntary commitment based in part on testimony of treating psychiatric nurse practitioner); *In re Hospitalization of Mark V.*, 375 P.3d 51, 59 (Alaska 2016) (involving involuntary commitment based on testimony of treating psychiatrist).

would have no effect on Linda's own rights.[33]

In sum, the superior court was the proper court for commencement of civil proceedings for commitment and involuntary medication, and the court did not err when it denied Linda's motions to stay or dismiss the proceedings because of the competency commitment ordered by the district court.

**B.     The Superior Court Made An Independent Determination Of Linda's Best Interests And Did Not Err By Authorizing Involuntary Medication**.

In *Myers v. Alaska Psychiatric Institute* we held that the right to refuse psychotropic medication is fundamental under the Alaska Constitution's liberty and privacy protections.[34]  Therefore, "before [the] state may administer psychotropic drugs to a non-consenting mentally ill patient in a non-emergency setting, an independent judicial best interests determination is constitutionally necessary to ensure that the proposed treatment is actually the least intrusive means of protecting the patient."[35]  The court must find by clear and convincing evidence that the patient is incapable of giving informed consent and that the administration of medication is in the patient's best interests "considered in light of any available less intrusive treatments."[36]

Linda argues that the superior court erred when it found that API satisfied its burden of proving that the involuntary administration of Thorazine was in her best interests.  Specifically, she contends that the superior court "failed in its duty to make an

---

[33]     *See State v. Am. Civil Liberties Union of Alaska*, 204 P.3d 364, 374 (Alaska 2009) (declining to decide constitutional challenge "in a hypothetical setting" where risks of doing so outweighed hardships to plaintiffs if issue was left undecided).

[34]     138 P.3d 238, 246-48 (Alaska 2006).

[35]     *Id.* at 250.

[36]     *Id.* at 252-53.

independent judicial determination, instead deferring to the judgment of Linda's treatment providers"; that the court erred in finding that API considered alternative treatments; and that the court "erred in discounting Linda's concerns over Thorazine based on her pregnancy and rejecting out of hand the option of not administering any medication." Our review of the record, however, leads us to conclude that the superior court made an independent best interests determination and that its findings were not erroneous.

First, the record sufficiently demonstrates that the superior court made its own "independent judicial determination" that the administration of medication was in Linda's best interests. The court considered the testimony of the court visitor, Dr. Alexander, and Linda herself in deciding that Linda was incapable of giving or withholding informed consent. The court gave deference to Dr. Alexander's "very thoughtful" opinion of Linda's treatment, deciding that "great care ha[d] been taken . . . to determine and propose medications that she ha[d] previously experienced without side effect[s] and that involve[d] the least amount of risk possible to [Linda] and to her pregnancy while effectively treating [her] current condition." The court was entitled to rely on the doctor's expert testimony when reaching its own independent conclusion about Linda's best interests.[37]

The record also supports the independent conclusion that there were no less intrusive alternatives to involuntary medication. Dr. Alexander explained why Thorazine was the best option; he opined that isolation was the only possibly effective alternative but that, unlike medication, it would not address Linda's persistent delusions and

---

[37]     *See id.* at 250 (observing that the best interests determination "certainly must be fully informed by medical advice received with appropriate deference, [though] in the final analysis the answer must take the form of a legal judgment that hinges not on medical expertise but on constitutional principles aimed at protecting individual choice").

paranoia. The court did not err by accepting Dr. Alexander's opinion that medication was necessary to effectively treat Linda and that not medicating her "would lead to greater suffering, mental, emotional, but also physical . . . for [Linda] and for her child."

Finally, the record shows that the superior court considered the risks of Thorazine and the reasonableness of Linda's pregnancy-based objection to it. The court relied in part on its direct observations of Linda during the hearing to discount her fears about the side effects and to give more credence to Dr. Alexander's testimony about them. We defer to the superior court's credibility determination.[38]

## V. CONCLUSION

We AFFIRM the orders of the superior court asserting its jurisdiction and granting the petition for involuntary medication.

---

[38] *See In re Hospitalization of Jacob S.*, 384 P.3d 758, 769 & n.36 (Alaska 2016) (observing that "we will not question on appeal" superior court's finding that respondent was not credible in testifying that "he would be willing to take medication and participate in outpatient treatment if released from API").