*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ADAM ISRAEL, | ) | |
| | ) | Supreme Court No. S-16990 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-11063 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | No. 7432 – March 20, 2020 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Adam Israel, pro se, Seward, Appellant. Mark Cucci, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Stowers, Maassen, and Carney, Justices. [Winfree, Justice, not participating.]

STOWERS, Justice.

I.      INTRODUCTION

Psychiatrists employed by the Alaska Department of Corrections (DOC) diagnosed an inmate with paranoid schizophrenia. The inmate disputes his diagnosis, contending that his claimed rare genetic ability to see the electro-magnetic radiation of poltergeists is misunderstood as a delusion. The inmate brought a medical malpractice action against the psychiatrists and DOC seeking rescission of his diagnosis and

damages. DOC filed a motion for summary judgment supported by an affidavit from DOC's chief medical officer. The affidavit confirmed the inmate's diagnosis and asserted that the inmate received treatment consistent with his diagnosis. After notifying the inmate that he needed expert testimony to oppose the motion for summary judgment, the superior court granted DOC's summary judgment motion because the inmate failed to provide expert testimony to rebut DOC's evidence.

The inmate appeals, arguing that DOC's medical director was not qualified to testify about the standard of care under AS 09.20.185. We do not resolve this issue because the inmate failed to create a genuine issue of material fact about the correctness of his diagnosis. We affirm the superior court's grant of summary judgment. We also reject the inmate's other arguments on appeal.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Adam Israel has been an inmate in DOC custody since January 2005. He was convicted of second-degree murder for stabbing and killing his mother, and he was sentenced to 60 years' imprisonment with 20 years suspended.[1] For over three years, Israel was incarcerated in Colorado in a correctional facility under contract with DOC. When he returned to Alaska in May 2013 he did so with a diagnosis of paranoid schizophrenia. Dr. William Worrall, a psychiatrist employed by DOC, also diagnosed Israel with paranoid schizophrenia. DOC placed Israel in a facility for inmates with mental health issues. Israel's issues stem from two sets of beliefs. The superior court summarized one of them:

> [Israel] testified that [members of] his extended family, perhaps including comedian Steve Martin, are involved in a

---

[1]     *Israel v. State*, No. A-9928, 2011 WL 12710297, at *1 (Alaska App. June 29, 2011).

conspiracy to keep him in prison by bribing or coercing [DOC] personnel including the [defendant] doctors. He testified that his family does this to discredit him and keep him in prison in order to prevent him from testifying to murders and rapes committed by his family. He testified that family members have told him that they bribed [DOC] employees including Dr. Worrall.

Israel believes DOC staff are involved in this conspiracy, and he is sometimes hostile toward them.

Israel's second set of beliefs is central to the dispute in this case: he contends there is "inbreeding" among his family and as a result he has a rare genetic trait affecting his eyes that enables him to see poltergeists. In an April 21, 2016 hearing Israel stated:

I'm able to see electro-magnetic radiation at a very low level, and that's a result of a defect in the pigment epithelium of my eye, and there's a dystrophied stroma in the iris. What that does is it makes my eyes more susceptible to sensitivity toward the light. Now, poltergeists are essentially plasma. When you stop breathing, the ions in your atoms — and there's roughly 10,000 atoms in a single cell — remain magnetically charged, and they're bonded together still. So the direct current from the earth is, it repels the light-charged particles from your body and essentially excretes them, and they are absorbed into the gaseous air, becoming plasma. So as a result of that, there is like a prismatic effect. You have these charged particles within the oxygen molecules, nitrogen molecules, and I'm able to see — even though it's very low-energy photons — I can see them.[2]

Israel asserts that "any respected physician knows this phenomenon" exists, and he faults Dr. Worrall for diagnosing him with paranoid schizophrenia without allowing Israel to

---

**2** Israel also claims that former British Prime Minister David Cameron is his "third cousin, once removed" and shares the trait.

demonstrate his rare retinal trait. Israel proposed to prove that he can see poltergeists: "To perform a demonstration, insects are secured in jars containing ethanol, and their corpses are then removed. Israel can then identify from the seemingly empty jars which species of insects had been contained therein, with no prior knowledge of which insects had been selected for exhibition."

## B. Proceedings

### 1. Background and early proceedings

In October 2014 Israel, representing himself, filed a complaint for medical malpractice in the superior court. He named as defendants DOC, Dr. Worrall, and Dr. Dwight Stallman, another DOC psychiatrist. Israel claimed the psychiatrists "fraudulently misdiagnosed [him] with a severe mental illness" due to his "well documented ability to see poltergeists." He sought rescission of his diagnosis and monetary damages and claimed the diagnosis impaired his access to rehabilitative services while in prison, his prospects for release on parole, and his ability to become a productive member of society.[3]

Because Drs. Stallman and Worrall were both DOC employees at the time Israel's claims arose, the Attorney General certified that they were acting within the scope of their employment and proposed making DOC the sole defendant.[4] Israel

---

[3] We usually hear challenges to involuntary medication on constitutional grounds. *See, e.g.*, *In re the Hospitalization of Naomi B.*, 435 P.3d 918, 929 (Alaska 2019) (stating that involuntary medication implicates constitutional rights). But Israel maintained that his claims were about medical malpractice. Israel's complaint references "a violation of constitutional magnitude," but when he was asked directly if he was making a constitutional claim he insisted that he was not. He took the same position in a related case filed previously in federal court.

[4] *See* AS 09.50.253(c) ("Upon certification by the attorney general that the state employee was acting within the scope of the employee's office or employment at
(continued...)

challenged this, and the superior court held a hearing on the matter. The court took the opportunity to make factual findings in addition to resolving the certification issue. The court found that "Mr. Israel testified honestly about his understanding of events but that this understanding does not reflect reality. Much of Mr. Israel's testimony was bizarre and, at least from a lay perspective, consistent with [that of] someone suffering from paranoid schizophrenia." The court concluded, "Mr. Israel believes he testified truthfully. But Mr. Israel's claims are incredible. Without supporting evidence, the court cannot find that Mr. Israel's testimony is based in reality." The court determined both doctors were acting within the scope of their employment and directed the case to proceed with DOC as the only defendant.

As the case proceeded Israel made several requests for assistance in disproving his diagnosis. These included a "psych eval or a physical examination" of himself pursuant to Alaska Civil Rule 35, assembling a panel of psychiatrists and other experts pursuant to AS 09.55.536,[5] and discovery requests for his DOC mental-health records as well as objects (e.g., insects, glass jars) for him to demonstrate his retinal trait. The court denied these requests.

---

**4** (...continued)
the time of the incident out of which the claim arose, any civil action or proceeding commenced upon the claim in a state court is considered an action or proceeding against the state under the provisions of this title, and the state is substituted as the party defendant.").

**5** *See* AS 09.55.536(a) ("In an action for damages due to personal injury or death based upon the provision of professional services by a health care provider . . . the court shall appoint . . . a three-person expert advisory panel unless the court decides that an expert advisory opinion is not necessary for a decision in the case.").

### 2. Motions for summary judgment

Israel moved for summary judgment, arguing that because DOC had no evidence that he suffered from paranoid schizophrenia — other than Dr. Worrall's diagnosis, which wrongly failed to consider his retinal trait — it could not substantiate that diagnosis. DOC responded that Israel's argument was conclusory and inverted the burden of proof in the case.

DOC filed its own motion for summary judgment, which it supported with the affidavit of Dr. Robert Lawrence, chief medical officer for DOC. Dr. Lawrence summarized Israel's treatment history while in DOC custody, and he noted Israel's delusional thoughts concerning his "special eyes," special powers including extra-sensory perception, and relations to celebrities and serial killers. Dr. Lawrence explained that Drs. Stallman and Worrall were Israel's treating psychiatrists. As Israel continued to verbalize delusions, refuse medication, and become hostile toward staff, they decided to medicate him involuntarily. Dr. Lawrence concluded:

> The steps taken by the DOC medical staff with regard to providing Mr. Israel with proper mental health care are consistent with DOC policies and procedures and fully satisfied the applicable medical standard of care. I am aware of no evidence that Mr. Israel has suffered harm attributable to DOC medical staff's failure to provide him with necessary and proper medical care and medication.

In support of its motion DOC also submitted portions of Israel's mental-health records while in DOC's care.

DOC's motion noted Israel's statutory burden to prove the applicable standard of care, that the standard of care was not met, and that this failure was causally

linked to cognizable injuries.[6] DOC argued that Dr. Lawrence's affidavit established that DOC's psychiatrists met the standard of care and because Israel failed to produce medical expert testimony to counter Dr. Lawrence's affidavit, he could not carry his statutory burden and defeat DOC's motion for summary judgment.

Israel responded that his case came within the exception for medical malpractice claims arising from non-technical issues, so no expert testimony was needed.[7] He argued the State's determination that he suffered from delusions was central to its diagnosis of paranoid schizophrenia. He then defined "delusion" as a false belief,

---

[6]     AS 09.55.540(a) provides:

> In a malpractice action based on the negligence or wilful misconduct of a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence
>
> > (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;
> >
> > (2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and
> >
> > (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

[7]     *See Hertz v. Beach*, 211 P.3d 668, 680 (Alaska 2009) (" 'In medical malpractice actions . . . the jury ordinarily may find a breach of a professional duty only on the basis of expert testimony.' But we have recognized an exception: 'expert testimony is not needed in non-technical situations where negligence is evident to lay people.' " (first quoting *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 200 (Alaska 1980); and then quoting *Kendall v. State, Div. of Corr.*, 692 P.2d 953, 955 (Alaska 1984))).

"in spite of what constitutes inconvertible . . . proof to . . . the contrary" and that is "not one ordinarily accepted by other members of [a] person's culture." He argued that because a lay person could readily determine whether a person was delusional, expert testimony would not be necessary to establish the standard of care for a diagnosis of paranoid schizophrenia. Israel also argued that Dr. Lawrence's affidavit was insufficient on several grounds, including that Dr. Lawrence "is not an expert psychologist or [p]sychiatrist. He practices family medicine."

The court heard oral argument on the competing motions for summary judgment. Before the hearing the court issued a notice to Israel regarding DOC's summary judgment motion. The notice summarized Israel's burden to defeat DOC's motion under Civil Rule 56 and AS 09.55.540, and it included excerpts from each. The notice stated that "[i]n most cases, a medical malpractice plaintiff must offer testimony from a qualified medical expert" to prove each element of the cause of action. It suggested ways for Israel to carry his burden or request additional time, and it warned that his case would end if the court granted DOC's motion for summary judgment.

At the hearing the parties largely reiterated their previous arguments, but Israel pressed the point that Dr. Lawrence did not qualify as an expert on the relevant standard of care under AS 09.20.185. The statute provides in pertinent part:

> In an action based on professional negligence, a person may not testify as an expert witness on the issue of the appropriate standard of care unless the witness is
>
> > (1) a professional who is licensed in this state or in another state or country;
> >
> > (2) trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue; and
> >
> > (3) certified by a board recognized by the state as

having acknowledged expertise and training directly
related to the particular field or matter at issue.[8]

DOC responded that as chief medical officer Dr. Lawrence "supervises and evaluates the treatment of inmate medical concerns. He supervises and evaluates the doctors who work under him, including the psychiatrists." DOC noted that Dr. Lawrence had reviewed the "medical records of the mental health clinicians and the doctors who've treated Mr. Israel." The court observed that DOC had also come forward with "medical records that show the diagnosis by qualified medical professionals of [Israel] as a paranoid schizophrenic."

The court issued an oral decision granting summary judgment to DOC. The court acknowledged that Dr. Lawrence is not a psychiatrist but nonetheless found that in his affidavit:

> [Dr. Lawrence] appropriately refers to the diagnosis that's been given to him, which Mr. Israel admits. And Lawrence also says that Worrall and Stallman are the DOC psychiatrists, and there's no dispute by Mr. Israel — as best I can tell — that, in fact, those two gentlemen are psychiatrists. They've made that diagnosis, which Lawrence has repeated in his affidavit, and Mr. Israel has offered me nothing other than his bald statement that supports what he says in the complaint, that is, that he has all these abilities, i.e., to see poltergeists because of his extremely rare retinal defect, his relationship to celebrities.

In written orders the court memorialized its oral ruling denying Israel's motion for summary judgment and granting DOC's. The court ruled that "DOC has provided expert testimony that establishes that the standard of care was not violated. Because [Israel] has

---

**8** AS 09.20.185(a).

failed to provide expert testimony to contradict [DOC's] showing, [Israel's] claim for medical malpractice fails as a matter of law."

### 3. Additional proceedings

DOC moved for final judgment and for $5,600 in attorney's fees, representing 20% of its actually incurred fees. Israel moved for reconsideration and for disqualification of the superior court judge. The court denied Israel's motion for reconsideration, stating that Israel "misconstrued" the burden of proof. Israel had the burden to establish the relevant standard of care, and Israel had "failed to provide any expert evidence that his diagnosis of schizophrenia by state psychiatrists was negligent. Thus, [DOC] was entitled to summary judgment based on this lack of proof."

The court denied Israel's motion for disqualification, and upon referral pursuant to AS 22.20.020(c) Superior Court Judge Vanessa H. White reviewed and agreed with that ruling.[9] The court thereafter entered final judgment against Israel and awarded DOC $5,600 in attorney's fees.

Israel appeals, reiterating that Dr. Lawrence was not qualified to testify about the relevant standard of care and that Israel's offer of proof that he is not delusional was wrongly rejected.[10] Israel assigns error to the superior court's denial of

---

**9** *See* AS 22.20.020(c) ("If a judicial officer denies disqualification the question shall be heard and determined by another judge . . . .").

**10** Israel makes other arguments that do not merit full discussion. He attacks the admissibility of the facts underlying Dr. Lawrence's affidavit. He pressed this argument before the superior court, but in his briefing before us he only refers in passing to "inadmissible hearsay of unidentified prisoners through a third party." "[I]ssues not briefed [on appeal] or only cursorily briefed are considered waived." *Mengisteab v. Oates*, 425 P.3d 80, 90 n.41 (Alaska 2018) (quoting *Daggett v. Feeney*, 397 P.3d 297, 304 n.19 (Alaska 2017)). Israel also invokes our decision in *Poulin v. Zartman*, 542 P.2d
(continued...)

his discovery motions and of his request for an expert advisory panel, and he renews his claims that the superior court judge was biased and should have been disqualified. Finally, Israel contends that the court abused its discretion in awarding attorney's fees to DOC.

## III.   STANDARDS OF REVIEW

"We review grants of summary judgment de novo, drawing all factual inferences in favor of, and viewing the facts in the light most favorable to the non-prevailing party (generally the non-movant)."[11] "We will 'affirm grants of summary judgment when there are no genuine issues of material fact, and the prevailing party (generally the movant) [is] entitled to judgment as a matter of law.' "[12] "We may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."[13]

We review rulings on discovery motions, motions to disqualify a judge, and awards of attorney's fees for abuse of discretion.[14] "A decision constitutes abuse of

---

[10]   (...continued)
251 (Alaska 1975), which he misreads as creating a three-prong evidentiary test for establishing the standard of care.

[11]   *Leahy v. Conant*, 436 P.3d 1039, 1043 (Alaska 2019) (quoting *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

[12]   *Id.* (quoting *Rockstad*, 113 P.3d at 1219).

[13]   *Id.* (quoting *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015)).

[14]   *Lindbo v. Colaska, Inc.*, 414 P.3d 646, 650 (Alaska 2018) (discussing the standard of review for discovery motions); *Timothy W. v. Julia M.*, 403 P.3d 1095, 1100 (Alaska 2017) (discussing the standard of review for motions to recuse under AS 22.20.020); *Riddle v. Lanser*, 421 P.3d 35, 44 (Alaska 2018) (discussing the standard of review for awards of attorney's fees).

discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[15]

## IV. DISCUSSION

### A. Summary Judgment Was Proper Because Israel Failed To Raise A Genuine Issue Of Material Fact About The Correctness Of His Diagnosis.

Israel styled his complaint as a medical malpractice action, specifically arguing that he was "misdiagnosed" with paranoid schizophrenia. Under AS 09.55.540, Israel had the burden as plaintiff to prove the relevant standard of care to be exercised by the treating psychiatrists, that the psychiatrists failed to meet that standard, and that he was proximately harmed by that failure.[16] Because Israel's claim for relief was based on *misdiagnosis*, if this case had proceeded to trial and DOC convinced the jury that the diagnosis was correct, then it would have won.

This case did not reach a jury because the superior court granted summary judgment in DOC's favor. A grant of summary judgment is proper when the defendant shows that "there is an absence of a factual dispute on a material fact and that this absence of a dispute constitutes a failure of proof on an essential element" of the cause of action.[17] In *Christensen v. Alaska Sales & Service* we reiterated that a defendant who moves for summary judgment bears the burden of showing this failure.[18] Further, "a

---

[15] *John E. v. Andrea E.*, 445 P.3d 649, 654 (Alaska 2019) (alteration in original) (quoting *del Rosario v. Clare*, 378 P.3d 380, 383 (Alaska 2016)).

[16] *See* AS 09.55.540(a).

[17] *Achman v. State*, 323 P.3d 1123, 1126 (Alaska 2014) (quoting *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007)).

[18] 335 P.3d 514, 517 (Alaska 2014).

non-moving party does not need to *prove* anything to defeat summary judgment. But a non-moving party cannot create a genuine issue of material fact merely by offering admissible evidence — *the offered evidence must not be* too conclusory, too speculative, or *too incredible to be believed*, and it must directly contradict the moving party's evidence."[19]

In its order granting summary judgment, the superior court concluded that "DOC has provided expert testimony that establishes that the standard of care was not violated." Israel argues that the court erred because Dr. Lawrence did not qualify as an expert witness on the standard of care under AS 09.20.185. We will assume, without deciding, that Israel is correct — that there was no evidence by a qualified expert defining the relevant standard of care. But we can affirm the court's grant of summary judgment "on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."[20] Here that basis was the unrebutted correctness of Israel's diagnosis of paranoid schizophrenia.

Dr. Lawrence stated in his affidavit that Israel returned from prison in Colorado with a diagnosis of paranoid schizophrenia. Two DOC psychiatrists concurred with that diagnosis based on their determinations that Israel suffered from delusions. Israel admits that Drs. Stallman and Worrall were psychiatrists, and he admits that they diagnosed him with paranoid schizophrenia.

Israel framed his arguments around the diagnostic criteria for paranoid schizophrenia, pressing repeatedly that the touchstone symptom is delusions. According to the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR), "[t]he

---

[19]     *Id.* at 516 (first emphasis in original, second and third emphases added).

[20]     *Leahy v. Conant*, 436 P.3d 1039, 1043 (Alaska 2019) (quoting *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015)).

essential feature of the Paranoid Type of Schizophrenia is the presence of prominent delusions or auditory hallucinations in the context of a relative preservation of cognitive functioning and affect."[21] The diagnostic criteria for paranoid schizophrenia describe it as "[a] type of Schizophrenia in which the following criteria are met:  A. Preoccupation with one or more delusions or frequent auditory hallucinations.  B. None of the following is prominent:  disorganized speech, disorganized or catatonic behavior, or flat or inappropriate affect."[22]

Israel admits that he was assessed by prison psychiatrists, that they diagnosed him with paranoid schizophrenia, and that delusions are the key symptom of that condition.  The dispositive question is whether Israel's beliefs about his retinal trait and about his extended family constitute delusions.  We agree with the superior court that these beliefs are "delusional as a matter of law."

Israel notes that a delusion is a "fixed false belief[] that [is] held tenaciously, even in the face of evidence to the contrary,"[23] and he contends he must be given a chance to prove his beliefs are not, in fact, false.  To this end, he insists that he should have been allowed to conduct his insects-in-jars demonstration.  But this offer of proof, like his claimed ability to see poltergeists, is "too incredible to be believed" and therefore is insufficient to defeat a motion for summary judgment.[24]

---

[21]     AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 313 (Michael B. First et al. eds., 4th ed., text rev. 2000).

[22]     *Id.* at 314.

[23]     *Cf. Belief, Delusional Belief*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A false, often bizarre belief that derives [usually] from a psychological disturbance.").

[24]     *Christensen*, 335 P.3d at 516.

Dr. Lawrence's affidavit, Israel's medical records, Israel's admissions, and his proffer of the DSM-IV-TR diagnostic criteria for paranoid schizophrenia establish that his diagnosis was consistent with the pathology observed by Israel's treating psychiatrists. In other words, Israel's diagnosis of schizophrenia was (at least) presumptively correct, and Israel provided no psychiatric expert testimony to raise a genuine issue of material fact that the DOC psychiatrists' diagnosis was incorrect. Thus, there was an absence of a genuine factual dispute on a material fact — the diagnosis of paranoid schizophrenia — and this absence of a material dispute constitutes a failure of proof by Israel on an essential element of his cause of action.[25] Because Israel failed to rebut DOC's showing that Israel's diagnosis was accurate with evidence sufficient under the *Christensen* standard, summary judgment was properly granted to DOC.[26]

## B. Israel's Other Arguments Lack Merit.

Israel makes several other arguments on appeal, but none have merit.

### 1. The superior court did not err in denying Israel's discovery motions.

Israel contends that the superior court erred by denying his motion for his DOC mental health records and for materials to demonstrate his retinal trait. He cites Civil Rules 26(b)(3), 26(b)(4), and 34 as support for these requests. However, we note that Israel first sought these items in a motion to compel, which is appropriate in circumstances where a party fails to appropriately respond to a discovery request.[27] But

---

[25] *Achman v. State*, 323 P.3d 1123, 1126 (Alaska 2014) (quoting *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007)).

[26] This reasoning applies with greater force to Israel's argument that expert testimony was unnecessary in this case. *See supra* note 7 and accompanying text.

[27] *See* Alaska R. Civ. P. 37(a)(2)–(3).

Israel could not obtain an order compelling discovery until he first "conferred or attempted to confer with [DOC] in an effort to secure the information or material [he sought] without court action."[28] Israel did not confer with DOC — let alone make proper discovery requests — before moving to compel disclosure, even after DOC highlighted this procedural misstep. A self-represented litigant must make a good-faith effort to comply with the Civil Rules or inform the court of difficulties with complying.[29] Given this posture the superior court did not abuse its discretion by denying Israel's motion to compel.

Israel also argues that an expert advisory panel should have been assembled pursuant to AS 09.55.536. But we have already rejected the argument that expert advisory panels were created as an aid to self-represented litigants.[30]

### 2. The superior court did not abuse its discretion in denying Israel's motion to disqualify.

Israel contends that Superior Court Judge Frank A. Pfiffner should have been disqualified from the case, arguing that "Judge Pfiffner's attitude suggests that he thought Israel's beliefs were nonsense and not worth his time to give any proper consideration." "To succeed on a motion to disqualify a judge for bias, the movant must show that the judge's actions 'were the result of personal bias developed from a

---

[28] Alaska R. Civ. P. 37(a)(2)(B).

[29] *McLaren v. McLaren*, 268 P.3d 323, 336 (Alaska 2012).

[30] *See Parker v. Tomera*, 89 P.3d 761, 767 (Alaska 2004) ("We have previously rejected the argument that the legislature created expert advisory panels to protect *pro se* litigants.").

nonjudicial source.' "[31] Israel has not identified any source of extra-judicial bias. It is true that Judge Pfiffner referred to Israel's beliefs as "incredible" and "delusional as a matter of law," but Judge Pfiffner had already heard testimony and read Israel's court papers expressing Israel's beliefs about his rare genetic trait, his lineage, and his family's motivations to silence him. Where a trial judge expresses a negative opinion about a litigant on the basis of the evidence presented, the comment does not constitute a basis for judicial disqualification.[32]

### 3. The superior court did not abuse its discretion in awarding attorney's fees to DOC.

Israel makes several arguments for vacating the superior court's award of attorney's fees against him. First, he notes that AS 09.60.010(c) shields certain litigants from adverse attorney's fee awards if they raise constitutional claims.[33] Prior to this appeal, Israel repeatedly disavowed any constitutional claims arising from his involuntary medication. While he adopts a different posture in his briefing before us, we conclude that he did not proceed before the superior court as a constitutional claimant. Therefore Israel was not immune to an attorney's fee award against him.

---

[31] *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001) (quoting *Nelson v. Jones*, 781 P.2d 964, 972 (Alaska 1989)).

[32] *See Johnson v. Johnson*, 394 P.3d 598, 604 (Alaska 2017) ("[W]e do not presume an improper bias when a judge witnesses events that take place during court proceedings, even if those events prompt the judge to form a negative opinion of a party.").

[33] *See* AS 09.60.010(c) ("[T]he court . . . may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights . . . .").

Israel makes several other arguments for reversing the award of attorney's fees against him, but only one of them warrants analysis.[34] Israel contends that the superior court abused its discretion by awarding attorney's fees at a level that "would put a substantial hardship on Israel."

The superior court awarded DOC 20% of its actually incurred attorney's fees, which conforms to the default award under Civil Rule 82(b)(2). While a court "may vary an attorney's fee award" based on several factors,[35] variation is not mandatory and the court is not required to explain why it has chosen *not* to modify the award.[36] We find no abuse of discretion in the superior court's decision to award DOC $5,600 in attorney's fees at the conclusion of more than three years of litigation.

## V. CONCLUSION

We AFFIRM the superior court's order granting summary judgment to DOC, its discovery orders, its denial of Israel's motion to disqualify the judge, and its award of attorney's fees.

---

[34] Israel claims that DOC extended the litigation to drive up its expenses, that DOC's motion for attorney's fees was untimely, and that his opposition to DOC's motion for attorney's fees was lost in the mail and therefore not considered. DOC persuasively counters these claims.

[35] Alaska R. Civ. P. 82(b)(3).

[36] *Cf. City of Kodiak v. Kodiak Pub. Broad. Corp.*, 426 P.3d 1089, 1095 (Alaska 2018) (" '[The] trial court has broad discretion to award Rule 82 attorney's fees in amounts exceeding those prescribed by the schedule of the rule, so long as the court specifies in the record its reasons for departing from the schedule.' Because the superior court did not specify any reasons for a variation in this case, we cannot uphold the award of full attorney's fees on the alternative basis of Rule 82 . . . ." (alteration in original) (citations omitted) (quoting *Alaskasland.com, LLC v. Cross*, 357 P.3d 805, 826 (Alaska 2015))).