NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DEBRA KING, individually and as the Personal Representative of the Estate of DAVID KING, | ) ) ) ) | Supreme Court No. S-18405 |
| | ) | Superior Court No. 3AN-19-07914 CI |
| Appellants, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION AND JUDGMENT[*] |
| | ) | |
| ALASKA GROWTH CAPITAL BIDCO, INC. and MIKE RZESZUT, | ) ) | No. 1989 – August 30, 2023 |
| | ) | |
| Appellees. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances: Yale H. Metzger, The Law Offices of Yale H. Metzger, Anchorage, for Appellants. Michael Jungreis and Colleen J. Moore, Reeves Amodio LLC, Anchorage, for Appellees.

Before: Maassen, Chief Justice, Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

## I.   INTRODUCTION

After her husband and two other people were killed in a helicopter crash, a woman sued the estate of one of the other decedents. During the course of that suit

---

[*]     Entered under Alaska Appellate Rule 214.

she sought discovery from a company that had provided several business loans to her husband. During a deposition the company objected to a particular line of questioning and eventually sought a protective order to prevent the wife from discovering business information it argued was irrelevant to the wrongful death suit. The court granted the protective order, and also subsequently granted the company's request for attorney's fees and a final judgment. The woman now appeals the court's orders.

Because the superior court did not abuse its discretion in granting the protective order, awarding attorney's fees, or granting final judgment, and the record reveals no legal error, we affirm the superior court's orders.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

In September 2018 David King was killed in a helicopter crash, along with a man named Joshua Pepperd and one of Pepperd's sons.[1]  Pepperd had purportedly hired David to help him move a recently purchased helicopter from Texas to Alaska, but the helicopter crashed near Gustavus.[2]

Before his death, David was the sole shareholder and president of Last Frontier Air Ventures, Ltd. (Last Frontier). Last Frontier was a full-service helicopter company operating out of Palmer. At some point prior to the crash David had obtained two loans in excess of four million dollars from Alaska Growth Capital Bidco, Inc. (AGC). The loans were used to purchase three helicopters and several real estate parcels, and were secured by those assets. The loans were also partially secured by the U.S. Small Business Administration's (SBA) 7(a) loan program.[3]

---

[1]   Unless otherwise indicated by the use of first names or "Estate," we use "King" to refer collectively to Debra King and the Estate of David King.

[2]   The facts surrounding the crash are not relevant to this appeal.

[3]   The SBA assists small businesses in getting business loans by partially guaranteeing some percentage of the loan against a borrower default, thereby reducing

In April 2018, some 5 months before his death, AGC obtained a judgment against David and Last Frontier for defaulting on the loans. Following the judgment, AGC took possession of the helicopters and real estate at a foreclosure sale. AGC was the sole bidder at this sale and took possession of the collateral as partial satisfaction for the outstanding loan amount. It is not clear from the record when exactly the foreclosure sale took place, but it appears to have been sometime around David's death. AGC subsequently sold the assets for an undisclosed amount of money.

## B. Proceedings

After the crash, Pepperd's wife and Pepperd's estate sued David's estate and Last Frontier in a wrongful death action. Shortly thereafter, David's wife Debra, both in her individual capacity and as the personal representative of David's estate, countersued Pepperd and his estate for wrongful death. As part of King's countersuit, King claimed damages that included the "loss of value to each and every business owned and/or operated by David King, including . . . Last Frontier."

During the pendency of this appeal, the underlying wrongful death litigation was settled, and the trial case was dismissed. We issued an order on February 3, 2023, dismissing any portion of this appeal regarding any continued request for production of the information in question.

### 1. AGC and King have a discovery dispute.

Due to AGC's loans to David and associated foreclosure activities, Pepperd sought discovery from AGC and subpoenaed AGC's Credit Administration Officer, Mike Rzeszut, to a deposition. In response AGC produced nearly 1,900 pages

---

lender risk. *Loans*, U.S. SMALL BUS. ADMIN., https://www.sba.gov/funding-programs /loans (last visited Aug. 10, 2023); *Operate as a 7(a) lender*, U.S. SMALL BUS. ADMIN., https://www.sba.gov/partners/ lenders/7a-loan-program/operate-7a-lender (last visited Aug. 10, 2023). In the case of borrower default, the lender can request repayment of some part of the loan from the SBA, normally after using other security collateral to repay itself. *Operate as a 7(a) lender*, U.S. SMALL BUS. ADMIN.

of documents and participated in a three-hour deposition. During the deposition, King pursued a line of questioning that AGC objected to. The questions at issue were related to whether AGC had made a claim against or been reimbursed by the SBA under its loan guarantee program for David's defaulted-on loans. King also questioned AGC about who AGC sold the foreclosed-on helicopters and property to. AGC refused to answer any questions pertaining to its dealings with the SBA or how it disposed of the helicopters or land after it took legal ownership at the foreclosure sale. The deposition was suspended after AGC indicated it would seek a protective order. AGC and King attempted to resolve the dispute but could not come to an agreement.

### 2. AGC is granted a protective order.

AGC sought a protective order under Alaska Civil Rule 30. AGC argued that King's deposition questions sought "commercially sensitive financial information," that they amounted to an "unfair inquiry into the sensitive and private business matters of a non-party," that divulging this information would negatively impact AGC's business, and that the information was irrelevant to the wrongful death case.

King opposed the motion and asserted that the "true value of the assets of David King . . . is a central issue in the measure of damages the King interests suffered as a result of [his] death." King maintained that the "best evidence of the value of those assets is the amount AGC realized from the sale of those assets on the open market, as opposed to the offset bid AGC made in a judicial sale in which it obtained title to those assets." King further argued that "the value of those assets would have been used for computing any payment AGC received in the form of Loan Guarantees from the [SBA]." King also complained that AGC did not file a copy of the deposition transcript with its motion, and therefore by default was unable to show that it was entitled to a protective order.

In reply, AGC clarified that while the "existence and availability" of the foreclosed-on assets might have been relevant to David's future earning capacity, that

relevance was negated by the fact that at the time of David's death the assets were already under a foreclosure judgment and he would have lost their availability for his business shortly thereafter. AGC also argued that no authority required it to file a transcript of the deposition with its motion for a protective order. AGC attached a copy of the deposition transcript to its reply, but did not cite to or otherwise mention the transcript.

The court granted AGC's request for a protective order. The order prevented inquiry into the "SBA's guarantee of David King's . . . loans" and "how, why, under what conditions, and for how much AGC disposed of any real or personal property assets that it originally acquired in partial satisfaction of any debt of David King or any related entity." The court granted the protective order "[f]or the reasons stated in AGC's Reply dated August 12, 2021."

### 3. AGC is granted attorney's fees.

After successfully obtaining the protective order, AGC moved for attorney's fees under Alaska Civil Rules 30(d)(3) and 37(a)(4).[4] AGC claimed that two attorneys had spent a total of 31.8 hours on work related to the protective order, resulting in $10,500 in fees.

King opposed the motion and claimed that any award of attorney's fees should only be against the probate estate, and that AGC had failed to distinguish between Debra and the Estate in its request. King also claimed that an award of attorney's fees would be available only if the protective order were based on an explicit finding that the deposition had been conducted in bad faith or in such a manner as

---

[4] Civil Rule 30(d)(3) applies the provisions of Civil Rule 37(a)(4) to the award of expenses incurred in seeking a protective order from a deposition. Rule 37(a)(4) outlines which party must pay expenses based on whether the protective order was granted or denied.

unreasonably to annoy, embarrass, or oppress, and the court had made no such explicit finding.

AGC's reply emphasized that Debra was a party to the underlying wrongful death action in both of her capacities and that she never indicated she was only acting in one capacity when she sought the discovery at issue. AGC also asserted that King's line of questioning that precipitated the protective order was so irrelevant that pursuing it was by definition unreasonably oppressive and burdensome.

The court granted AGC's request for attorney's fees, but found that a fee award in the amount requested would be unjust and used its discretion under Rule 37 to vary the award to 50% of the amount sought. The court determined that King's argument that the fee award should only be made against the Estate was "unsupported by the record." There was "nothing about the questions which clearly implicate[d] one capacity or the other." The court therefore awarded AGC attorney's fees in the amount of $5,250 against Debra and the Estate.

### 4. AGC is granted final judgment.

Subsequent to the fee award, AGC moved the court for an entry of judgment under Civil Rule 54(b).[5] AGC argued that it was not a party to the underlying case, that it was successful in pursuing both the protective order and the associated fee award, and that there was no further reason that it should be delayed in collecting on its fee award.

---

[5] Civil Rule 54(b) allows a court to enter a final judgment as to one or more but fewer than all of the parties for a sum certain or costs, on the "express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Alaska R. Civ. P. 54(b).

King opposed the motion and argued that an entry of final judgment against the Estate would violate AS 13.16.505[6] and would allow AGC to "cut in line" ahead of other creditors. AGC replied that King's opposition did not point to any just reason to delay an entry of judgment. It pointed out that AS 13.16.505 does not prevent a court from entering a judgment, but rather prevents execution on a judgment against property of an estate, and also noted that the statute would not prevent execution on a judgment against Debra personally. The court found that there was "no just reason for delay" and entered judgment against Debra "individually and as personal representative of the Estate of David King."

King now appeals, arguing that: (1) the court erred in granting the protective order; (2) the court erred in granting attorney's fees; (3) the court erred in granting a "joint and several" judgment against both the Estate and Debra personally; and (4) final judgment against the Estate was improper under AS 13.16.505.

## III. STANDARD OF REVIEW

"The superior court has broad discretion to determine the scope and extent of discovery and to craft protective orders."[7] Therefore, we "review rulings on discovery motions . . . and awards of attorney's fees for abuse of discretion."[8] "A decision constitutes [an] abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[9]

---

[6] Alaska Statute 13.16.505 states: "No execution may issue upon nor may any levy be made against any property of the estate under any judgment against a decedent or a personal representative, but this section shall not be construed to prevent the enforcement of mortgages, pledges, or liens upon real or personal property in an appropriate proceeding."

[7] *DeNardo v. Bax*, 147 P.3d 672, 676 (Alaska 2006).

[8] *Israel v. State, Dep't of Corr.*, 460 P.3d 777, 783 (Alaska 2020).

[9] *Id.* (second alterations in original) (internal quotations omitted) (quoting *John E. v. Andrea E.*, 445 P.3d 649, 654 (Alaska 2019)).

The application of joint and several liability to attorney's fees, and the application of probate statutes, are both questions of law.[10] "We apply our independent judgment to questions of law, and [will] adopt the rule of law 'most persuasive in light of precedent, reason, and policy.' "[11]

## IV. DISCUSSION

### A. The Court Properly Granted The Protective Order.

The scope of discovery is controlled by Alaska Civil Rule 26. Rule 26 provides that parties may obtain discovery "regarding any matter, not privileged which is relevant to the subject matter involved in the pending action."[12] Additionally, the rule explains that "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."[13] We have further explained that discovery rules are to be "broadly construed" and that "relevance for purposes of discovery is broader than for purposes of trial."[14] Rule 26(c) allows a court to enter a protective order limiting or prohibiting certain discovery where required by justice "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[15] Under Rule 30(d)(3) a party may halt a deposition and seek a protective order under Rule 26(c). A court can then limit the "scope and manner" of the deposition "upon a showing that the

---

[10] *See Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 792 (Alaska 1997); *In re Estate of Baker*, 386 P.3d 1228, 1231 (Alaska 2016).

[11] *State v. Schmidt*, 323 P.3d 647, 655 (Alaska 2014) (quoting *State v. Anthony*, 810 P.2d 155, 156-57 (Alaska 1991)).

[12] Alaska R. Civ. P. 26(b)(1).

[13] *Id.*

[14] *Lee v. State*, 141 P.3d 342, 347 (Alaska 2006) (quoting *Hazen v. Mun. of Anchorage*, 718 P.2d 456, 461 (Alaska 1986)); *see also Van Alen v. Anchorage Ski Club, Inc.*, 536 P.2d 784, 787 (Alaska 1975).

[15] Alaska R. Civ. P. 26(c).

examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress."[16] With these rules in mind, we evaluate King's claims in turn.

### 1. King fails to explain the relevance of the information sought.

King argues that the court erred in granting a protective order because the information sought was relevant under Rule 26. King claims that the price AGC received when it sold the foreclosed-on assets, plus any additional credit received from the SBA, is the most accurate and only acceptable way to calculate Last Frontier's true overall equity. But King provides little, if any, analysis or explanation for how or why the value of Last Frontier, as calculated this way, is relevant to the measure of damages in the wrongful death case.

Damages for wrongful death are limited to those "which are the natural and proximate consequence of the negligent or wrongful act."[17] This normally includes categories such as lost income, support payments, and the money value of lost companionship and love.[18] As far as we can tell, and King provides no clarifying explanation, the exact value of the assets in question would not assist in calculating any of these or other similar measures of damages.

King also fails to explain any causal connection between David's death and the loss of the assets. At the time of David's death, all of the assets in question were already under an order of foreclosure. This means that even if David had lived, he would have lost the assets. Their value is therefore irrelevant to wrongful death damages.[19]

---

[16] Alaska R. Civ. P. 30(d)(3).

[17] AS 09.55.580(b).

[18] AS 09.55.580(c).

[19] *See* AS 09.55.580(b).

Meanwhile AGC has claimed that the manner in which it recovers upon defaulted-on loans, and the way it does business with the SBA, are both sensitive internal business practices that are irrelevant to the case and would damage AGC if publicly released. Particularly given that King's failure to explain any viable theory for how the information sought is relevant to wrongful death damages, and AGC's otherwise substantial participation in discovery, we see no abuse of discretion in the superior court's conclusion that King's deposition questioning constituted an unfair and oppressive inquiry.

### 2. King's remaining protective order arguments fail.

King makes two other claims regarding the protective order. First, she claims that AGC's motion was deficient because it did not file a deposition transcript with its initial motion for a protective order.[20] Second, King claims that because a transcript of the deposition was then filed with AGC's reply brief, AGC raised "new evidence and arguments" in a reply brief and King was unfairly surprised. We are not persuaded.

As AGC points out, the Civil Rules contain no requirement that a deposition transcript be filed in order to sustain a protective order. Instead, the rules require either a "good cause" showing or "a showing" sufficient to meet the protective order standard.[21] As discussed above, the court properly granted the protective order based on AGC's showing, transcript or no.

King characterizes AGC's motion for a protective order as only making "very generalized arguments" and claims that "[h]ad AGC included the transcript . . . in its motion . . . King could have explained the relevance each question had to the underlying damages claims and how each of those questions was reasonably calculated

---

[20] Alternatively, King claims that without the deposition transcript the court did not have a sufficient evidentiary basis to sustain the protective order.

[21] Alaska R. Civ. P. 26(c), 30(d)(3).

to lead to the discovery of admissible evidence." But our review of AGC's motion shows that it clearly describes, in specific detail, the information that it sought to protect and why that information should not be discoverable. The motion provided more than enough detail for King to respond and for the court to evaluate. We see no deficiency in AGC's motion. And inasmuch as the transcript was needed or required, AGC provided it with its reply.

King then claims unfair surprise. But she has no basis to claim that the events of the deposition were somehow unknown or "new" to her. She was present at the deposition through counsel, and her counsel conducted the very questioning that she now claims is somehow "new." Moreover, as a party to the case, King presumably could access the deposition transcript. King also fails to explain why she needed a deposition transcript in order to explain the reasons and relevance for her own questions. Finally, even if the transcript was somehow "new" to King, our review of AGC's motion work reflects that it did not raise or argue any new issues in its reply. The reply succinctly and directly addressed only issues raised in King's opposition motion. We see no error here.

### B. The Court Properly Granted Attorney's Fees.

If a protective order under Rule 30 is granted, the rule further directs that "[t]he provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion."[22] Rule 37(a)(4), in turn, allows for the party that prevailed on the relevant motion to recover "reasonable expenses incurred in making the motion, including attorney's fees."[23] This same section also allows the court to limit a fee recovery if it finds that "the opposing party's . . . objection was substantially justified, or that other circumstances make an award of expenses unjust."[24] While this rule was

---

[22] Alaska R. Civ. P. 30(d)(3).

[23] Alaska R. Civ. P. 37(a)(4)(A).

[24] *Id.*

drafted with a party's motion to compel discovery in mind, its application to this situation is clear. Rule 30(d)(3) incorporates the use of Rule 37(a)(4) to require an award of attorney's fees to a party that is granted a protective order, unless the opposing party's actions were substantially justified or other circumstances make the award unjust.[25]

### 1.     The court's findings are supported in the record.

King argues that the court erred in granting attorney's fees because there was no evidence or finding that King's questioning "was being conducted in bad faith, or in such a manner as unreasonably to annoy, embarrass, or oppress." The record does not support this argument.

As discussed above, AGC clearly stated its reasons for seeking a protective order. AGC sought a protective order because the burden of providing the information at issue outweighed any possible benefit, the information sought was irrelevant and King persistently failed to show otherwise, unfettered access to the information would damage AGC and put it at a competitive disadvantage, AGC had already provided extensive discovery regarding its relationship with David King, and therefore King's deposition questioning was "unreasonably burdensome and oppressive." The court adopted AGC's reasoning when it granted the protective order. To the extent a specific finding of an oppressive examination was needed, these facts, supported by the record, establish the necessary showing.[26]

---

[25]     *See Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 884 (Alaska 2013) ("Under Civil Rule 37(a)(4)(B), if a motion to compel discovery is denied, the trial court must award reasonable attorney's fees to the opposing party, unless such expenses would be unjust.").

[26]     The rules allow a court to limit discovery "upon a showing that the examination is being conducted . . . in such a manner as unreasonably to annoy, embarrass, or oppress." Alaska R. Civ. P. 30(d)(3). The record supports that such a showing has been made here.

## 2. King's arguments about joint and several liability fail.

King argues that the trial court erred in granting the attorney's fee award against both Debra individually and the Estate. King asserts that the award should only be against the Estate because the record of the case "clearly demonstrates" that the information Debra sought was for the sole benefit of the Estate. We disagree.

King failed to indicate at the deposition that her questioning pertained to only one of her capacities. Nor does the record suggest that the information sought would be more relevant or of more benefit to the Estate. Both Debra and the Estate were parties, and under King's reasoning the information she sought would assist in establishing damages of benefit to her as well as to the Estate. Based on this record, we see no reason both Debra and the Estate would not equally benefit from a damages award.

The court rejected King's joint and several liability argument on the grounds that it was unsupported in the record and that "the distinction appears to be made . . . only to impact collection of the fee award, and is therefore not persuasive." While we take no position on whether King's argument was made only to impact collection of the fee award, we agree with the superior court that King's argument is not supported in the record. We therefore affirm the superior court's application of joint and several liability as to the attorney's fee award.[27]

## C. The Court Properly Granted Final Judgment.

King argues that the trial court erred by entering final judgment against the Estate because "execution on such final judgment is prohibited by the provisions of AS 13.16.505." She also suggests that entering a final judgment somehow gives AGC

---

[27] King also argues that the court's joint and several attorney's fee award violates AS 09.17.080's prohibition on joint and several liability. But in arguing as much, King misunderstands the scope of the statute. "[I]n types of litigation where AS 09.17.080 is not invoked, attorney's fees need not be apportioned by fault." *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 792 (Alaska 1997).

a higher status as a creditor, and allows AGC to "cut in line ahead of other creditors." King appears to be arguing that AGC is somehow inappropriately attempting to circumvent probate procedures. But King does not explain why a prohibition on execution prevents a final judgment, or how a final judgment would allow AGC to circumvent probate requirements.

King provides no analysis or argument to explain how AS 13.16.505 prevents a court from entering final judgment against an estate. Contrary to King's assertions, the text of AS 13.16.505 applies only to executions and levies.[28] A judgment is neither. And without cogent briefing as to why this statute prohibits a court from entering final judgment, we will not further address the issue.[29] Moreover, King has similarly failed to explain how entry of judgment would allow AGC to improperly "cut in line" ahead of other creditors. We observe no error in the superior court's order granting final judgment against both Debra King and the Estate of David King.

## V.    CONCLUSION

The superior court's protective order, attorney's fee award, and judgment in favor of AGC are AFFIRMED.

---

[28]    AS 13.16.505 ("No *execution* may issue upon nor may any *levy* be made against any property of the estate under any judgment . . . ." (emphasis added)).

[29]    *Barnett v. Barnett*, 238 P.3d 594, 598 n.11 (Alaska 2010) ("[A]rguments are waived if they are inadequately briefed on appeal." (citing *Petersen v. Mut. Life Ins. Co. of New York*, 803 P.2d 406, 410 (Alaska 1990))).