*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CALVIN N. MILLER, | ) | |
| | ) | Supreme Court No. S-16538 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-08698 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JUNE FOWLER and HOMESTEAD | ) | |
| PROPERTY INVESTMENTS, INC., | ) | No. 7255 – June 29, 2018 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: William D. English, Law Office of William English, Anchorage, for Appellant. J.E. Wiederholt, Aglietti, Offret & Woofter, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I.     INTRODUCTION

The purchaser of an apartment building filed suit to bar the seller's attempt to foreclose on the property after the purchaser stopped making payments. The purchaser also alleged that the seller had misrepresented the condition of the building's sewer lines at the time of sale. The superior court granted summary judgment in the seller's favor on all of the misrepresentation claims on the basis that they were barred by

the statute of limitations. During the trial, the superior court denied the purchaser leave to amend his complaint. After a bench trial on the remaining claims, the superior court concluded that the seller did not wrongfully foreclose on the building because the purchaser was in default. The purchaser appeals these three decisions. We reverse the grant of summary judgment because the seller failed to establish an absence of material fact issues regarding when the purchaser's causes of action accrued. We vacate the order denying the wrongful foreclosure claim because the superior court erred when it found the purchaser in default. We affirm the denial of the purchaser's motion to amend.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In 2009 Calvin Miller purchased from June Fowler by warranty deed an eight-unit, three-story apartment building located in Anchorage. Fowler is licensed by the Alaska Real Estate Commission and served as the listing licensee and listing brokerage on the sale. Miller and Fowler entered into a Purchase and Sale Agreement, and the sale was completed on September 2. Miller made a down payment of $20,000 and financed the remaining balance with a promissory note to Fowler. The note provided that it would be repaid over a five-year term in monthly installments starting at $2,000 and increasing to $2,500 in October 2010. The note was secured by a deed of trust, which Fowler recorded on September 4.

As part of the sale, Fowler provided the written property disclosure statement required under Alaska law.[1] In relevant part, Fowler disclosed defects in the building's private sewer line: "Sewage: has plugged up. 2006 correction to sewer pipe with excavation. All records of service calls at Alaska sewer and drain. Recent problems - very occassional [sic] caused by tenants mis-use." In addition to this written

---

[1]    *See* AS 34.70.010.

statement, Miller alleges that Fowler verbally told him at the time of the sale that any structural problems with the sewer line had been resolved and that any lingering issues were the result of tenant misuse. Miller claims that Fowler cited examples of tenants disposing of cat litter and dog waste in the toilet as the cause of any remaining drainage issues.

Miller alleges that soon after his purchase of the building, the sewer line began posing significant issues. He claims that tenants complained of sewage backing up in the drains and overflowing from toilets, tubs, and sinks. According to Miller, at first he tried to address these issues himself. He and his wife, Vicky Powell, manually vacuumed the building's sewer line and transferred the waste to RV dump sites. Miller eventually hired plumbers to snake the sewer line and, after plumbing expenses started adding up, later bought his own snake. He claims that he sometimes snaked the line several times a week. As the back-ups and overflows recurred, Miller was forced to refurbish the bathrooms of several of the units.

The sewer problems persisted and, in August 2012, Miller hired a plumber who used a camera to view the inside of the building's sewer pipe. The camera showed tree roots growing through the pipe and numerous breaks and buckles in the pipe. Miller claims that, after learning of the extent of the damage to the pipe, he began to investigate the building's history of sewer issues. Miller contacted a former owner of the building who had purchased it from Fowler shortly before Miller had. According to Miller, the former owner had owned the building for about six months and had experienced similar issues with the sewer line. The former owner exhausted his funds trying to fix the sewer issues and ultimately lost the building in foreclosure to Fowler, who in turn sold it to Miller. Miller also spoke to some of the building's tenants, many of whom were long-time residents. Several of them told Miller that the sewage issues had been ongoing for years, including during the time Fowler owned the building. In addition, Miller

consulted Anchorage officials who told him they had received several complaints about the building's sewer line over the years, but had ultimately been informed that the issues were resolved.

Miller decided to reroute the building's sewer line to connect it with a different segment of the public sewer. He claims that he secured a permit for the reroute and hired engineers to design it, a process that was complicated by the proximity of the new sewer line to Campbell Creek. He alleges he spent over $100,000 on this process but ultimately exhausted his funds before the new line was constructed.

To help Miller pay for the repairs, Fowler agreed to a series of modifications to the terms of the promissory note. First, in August 2012, Fowler agreed to a modification that deferred and reduced monthly payments and reduced the note balance. The note balance was reduced on the condition that Miller provide Fowler "Proof of Completed Repairs and Certification of Inspection by the Municipality of Anchorage of the Sewage System . . . by December 20, 2012." Fowler agreed to a second modification to the terms in September that further reduced monthly payments and the note balance. Like the first modification, the note balance reduction was conditioned on Miller providing the same proof of repairs by December 20, 2012.

Fowler agreed to a third and final modification on November 12, 2012. Only this modification is directly at issue in this appeal. Unlike the prior two modifications, which took the form of typed letters from Fowler to the escrow bank, the third modification is a handwritten one-page note from Fowler to Miller and Powell. The third modification provides for two additional changes: (1) "No payments of principal or interest on loan . . . until June 2013" and (2) "An additional credit of $80,000 to be deducted from loan balance upon completion of certification of sewer upgrades."

In February 2013 counsel for Fowler sent Miller a letter declaring that the modifications were "null and void" and stating that Miller would be offered no

reductions to offset the expenditures on the sewer line. The letter instructed Miller to fully pay all past due amounts on the note by May 15 and provide proof of insurance for the building; it also requested copies of permits that he had secured for the repair project. After Miller apparently failed to comply, Fowler commenced nonjudicial foreclosure proceedings on the building in May 2013. The notice of default stated that Miller had breached the deed of trust by failing to make payments on the note since September 2012.

## B. Proceedings

On August 7, 2013 Miller sued Fowler and her company, Homestead Properties Investment, Inc., to stop the foreclosure.[2] Miller's complaint raised several claims against Fowler: (1) wrongful foreclosure; (2) breach of contract; (3) breach of statutory and professional duties; (4) statutory and common law negligent misrepresentation; (5) willful misrepresentation; (6) common law intentional misrepresentation and fraud; (7) breach of the duty of good faith and fair dealing; (8) extinguishment of the loan under illusory promise and promissory estoppel; and (9) slander of title. Miller asked the court to enjoin the foreclosure, to enforce the modifications to the note, and to award damages. Fowler counterclaimed for a judgment of judicial foreclosure and for a judgment on the promissory note. The superior court issued a preliminary injunction enjoining nonjudicial foreclosure during the pendency of the suit.[3]

---

[2] Miller initially named four additional defendants: the broker for the sale of the building and his company, a property management company that Fowler had utilized, and the title company trustee for the deed of trust. Fowler and her company are the only remaining defendants on appeal; for simplicity, we refer to them collectively as "Fowler."

[3] After the superior court denied Miller's claims relating to the nonjudicial

(continued...)

In October 2013 Fowler moved for summary judgment on all of Miller's claims. Fowler argued that Miller's claims were barred by the statute of limitations, because they were based on misrepresentations that occurred four years prior, well beyond the two- and three-year statutes of limitations applicable to tort and contract claims, respectively.[4] Miller opposed summary judgment, urging that under the discovery rule his causes of action did not accrue until long after the sale date. In the alternative, he argued that Fowler was equitably estopped from pleading a statute-of-limitations defense.

In April 2014 the superior court granted summary judgment in Fowler's favor on all of Miller's claims relating to the initial sale of the building in 2009: breach of statutory and professional duties, negligent misrepresentation, willful misrepresentation, intentional misrepresentation and fraud, and breach of the duty of good faith and fair dealing. The superior court concluded that the discovery rule did not delay the accrual of these claims because, given "the serious and systemic nature of the [building's sewage] problem and evidence that . . . Miller was aware of the problem soon after the sale, a reasonable person would have investigated further well before three years had passed." The superior court declined to grant summary judgment on Miller's claims relating to the nonjudicial foreclosure because they were based on recent events and thus were not barred by any statute of limitations.

---

[3]    (...continued)
foreclosure, the court issued a decree of foreclosure and authorized the sale of the building in a judicial foreclosure sale. The superior court also awarded Fowler attorney's fees and the costs of foreclosure. The superior court apparently never dissolved the injunction against nonjudicial foreclosure.

[4]    *See* AS 09.10.053 (contract claims); AS 09.10.070(a) (tort claims).

Miller's remaining claims against Fowler proceeded to a three-day bench trial beginning in September 2015. On the second day of the trial, Miller moved to amend his complaint to assert the defense of unilateral mistake to Fowler's counterclaim for foreclosure. This motion was made on the basis of testimony by Powell that the December 20, 2012 completion deadline had not been mentioned in any verbal discussions with Fowler and the date the parties had actually discussed was in 2013 rather than 2012. The superior court denied the motion, stating: "It is so untimely. It is so prejudicial now at the time of the second day of the trial. It's never been pled. It has never been the position of the plaintiffs since the beginning of this case. I find it overly prejudicial."

In December 2015 the superior court issued an order concluding that Fowler did not wrongfully foreclose on the building. The court reasoned that the third modification, though on its face silent as to any deadline for completion of repairs, implicitly imposed a December 20, 2012 deadline. Accordingly, the court reasoned, "Miller defaulted on the agreement when he failed to complete the sewer repairs by December 20, 2012." It concluded that because Miller was in default and failed to cure, Fowler did not wrongfully foreclose on the building.

Miller appeals three issues: the grant of summary judgment on the statute of limitations issue, the order concluding that Fowler did not wrongfully foreclose because Miller was in default, and the denial of his motion to amend the pleadings mid-trial to include an affirmative defense of unilateral mistake.

III.    **STANDARD OF REVIEW**

"We review a grant of summary judgment de novo, 'affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a

matter of law.' "[5]   "We must determine 'whether any genuine issue of material fact exists,' and in so doing all factual inferences must be drawn in favor of — and the facts must be viewed in the light most favorable to — the party against whom summary judgment was granted."[6]  The accrual date on which the statute of limitations begins to run is a question of fact.[7]  For this reason, summary judgment is "[o]rdinarily . . . an inappropriate means of ascertaining when a statute of limitations commences."[8] "Where, however, there exist uncontroverted facts that determine when a reasonable person should have been on inquiry notice, 'we can resolve the question as a matter of law.' "[9] Whether such uncontroverted facts exist is reviewed de novo, "adopting the rule that best reflects precedent, reason, and policy."[10]  We similarly review the superior court's interpretation of contract language de novo.[11]  Finally, we review the superior court's denial of a motion to amend the pleadings for abuse of discretion.[12]  A superior court

---

[5]      *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012) (quoting *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008)).

[6]      *Id.* (quoting *Nielson v. Benton*, 903 P.2d 1049, 1051-52 (Alaska 1995)).

[7]      *Jones v. Westbrook*, 379 P.3d 963, 967 (Alaska 2016).

[8]      *Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 634 (Alaska 1990).

[9]      *Id.* (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 (Alaska 1988)).

[10]     *Egner v. Talbot's, Inc.*, 214 P.3d 272, 277 (Alaska 2009).

[11]     *Alaska Fur Gallery, Inc. v. Hwang*, 394 P.3d 511, 514 (Alaska 2017).

[12]     *Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 568 (Alaska 2015).

abuses its discretion when its denial "is manifestly unreasonable."[13]

## IV.    DISCUSSION

Miller appeals three separate decisions by the superior court: the grant of summary judgment based on the statute of limitations, the interpretation of the third modification to include a December 20, 2012 deadline, and the denial of Miller's motion to amend the pleadings to include an affirmative defense of unilateral mistake. We address each issue in turn.

### A.    Granting Summary Judgment On The Basis That Some Of Miller's Claims Were Barred By The Statute Of Limitations Was Error.

Miller argues that the superior court erred in concluding that some of his claims — those originating from alleged misrepresentations made at the time of the sale — were barred by the statute of limitations. The statute of limitations restricts the time a plaintiff has to bring a cause of action; it begins to run after a cause of action accrues.[14] "Although a cause of action generally accrues when the plaintiff incurs an injury, accrual can be delayed under [the] . . . discovery rule" if injury "is not immediately apparent" at the time of a wrongful act.[15] The common law discovery rule provides that a cause of action accrues on the date "when a reasonable person has enough information to alert that person that he or she has a potential cause of action or should begin an inquiry to protect his or her rights."[16] Determining this date "requires a 'fact-intensive' analysis"[17]

---

[13]    *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015).

[14]    *Cameron v. State*, 822 P.2d 1362, 1365 (Alaska 1991).

[15]    *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1274 (Alaska 2013).

[16]    *Reasner v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 394 P.3d 610, 614 (Alaska 2017) (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d
(continued...)

because "[w]hat a plaintiff should have known about her cause of action depends upon all of the surrounding circumstances."[18] Generally, inquiry notice is when an individual "has sufficient information to prompt an inquiry, not . . . when [the individual] has specific information establishing each element of [a] cause of action."[19] In the context of claims alleging common law fraud and misrepresentation, we have held that a plaintiff need not have "actual knowledge of scienter" for the claim to accrue.[20] Rather, the defrauded individual need only be on inquiry notice of a misrepresentation, not that the misrepresentation was *intended*.[21]

Miller filed his complaint on August 7, 2013. Accordingly, assuming the minimum two-year statute of limitations applies, all of his tort and professional misconduct claims must have accrued no earlier than August 7, 2011 to be timely.[22] The

---

[16]    (...continued)
288, 291 (Alaska 1988)).

[17]    *Id.* (quoting *Ranes & Shine*, 355 P.3d at 509).

[18]    *Breck v. Moore*, 910 P.2d 599, 604 (Alaska 1996).

[19]    *Reasner*, 394 P.3d at 614 (emphasis omitted).

[20]    *City of Fairbanks v. Amoco Chem. Co.*, 952 P.2d 1173, 1179 (Alaska 1998); *see also Bauman v. Day*, 892 P.2d 817, 826 n.13 (Alaska 1995) ("[N]othing in [a prior case] relaxes the 'reasonable person' standard so much as to allow the statute of limitations to run only when the person has actual knowledge of the fraud."). *Amoco* dealt with a statutory discovery rule, but in doing so it discussed the common law discovery rule. 952 P.2d at 1177-80.

[21]    *Bauman*, 892 P.2d at 826 n.13.

[22]    Like the superior court, we find it unnecessary to determine which specific statute of limitations (two-year or three-year) applies to each of Miller's claims because, even assuming the shorter limitations period applies to all of them, our conclusion is the
(continued...)

sale of the building was completed on September 2, 2009. The key question then is whether a reasonable person in Miller's position would have been on notice before August 7, 2011 (just under two years after purchasing the building) that he either had a potential cause of action against Fowler for her misrepresentations relating to the building's sewage line or should begin an inquiry to protect his rights.[23] On this record, we cannot say as a matter of law that a reasonable person would have been on notice.

As the movant, Fowler bore the burden of showing "through admissible evidence (1) the absence of genuine fact disputes, and (2) [her] entitlement to judgment as a matter of law."[24] However, at the summary judgment stage, Fowler failed to offer "uncontroverted facts" establishing that "a reasonable person should have been on inquiry notice" before August 7, 2011.[25] Fowler's summary judgment motion appeared to assume Miller's claims accrued on the date of purchase, and thus made no mention of another possible accrual date. However, there is no evidence that Miller was on inquiry notice of Fowler's alleged misrepresentation immediately upon purchasing the building.[26] Fowler's pre-sale disclosure statement acknowledged that the building experienced *some* sewer issues in the past and did not guarantee that the issues were

---

(...continued)
same. In making this assumption, we express no view on the merits of this question.

[23]     *See Egner v. Talbot's, Inc.*, 214 P.3d 272, 278 (Alaska 2009).

[24]     *Id.*

[25]     *Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 634 (Alaska 1990) (citing *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 (Alaska 1988)).

[26]     *See Bauman*, 892 P.2d at 828 (reasoning that homeowners were not initially on inquiry notice of permafrost-related issues with their property "because the presence of permafrost is not something that [the owners] could ascertain merely by observing the property").

entirely resolved. But it further asserted that any lingering issues with the building's sewer were attributable to "tenants mis-use." Accordingly, even assuming that Miller did experience significant issues with the building's sewer system beginning on the date of purchase, there is a genuine dispute of material fact whether it was reasonable for him to initially attribute these issues to tenant misuse.

In addition, Fowler failed to offer any evidence establishing an alternative accrual date other than the date of purchase. The record contains scant evidence on the precise nature and extent of the sewage issues during the crucial two-year period. The only exhibit attached to Fowler's summary judgment motion pertaining to the timing of the sewer issues was a May 2013 letter from counsel for Fowler to counsel for Miller. In it, Fowler's counsel asserted that the building's property manager denied "having *ever* received a single complaint respecting the sewage issues claimed." (Emphasis in original.) Further, "neither tenants nor neighbors [of the building] ha[d] reported 'barrels' of sewage being transported from the building on the industrial scale" claimed by Miller. Therefore, the only evidence Fowler offered with her summary judgment motion indicated that the building's sewage issues were neither severe nor frequent. Fowler's version of the facts would weigh in favor of a *later* inquiry notice date, given that the fewer and less severe the sewer issues were, the less cause Miller had to believe that Fowler made misrepresentations about the sewage system. Moreover, Fowler's version of the facts conflicts with Miller's own account that he started experiencing significant issues with the sewer line "[f]rom nearly the beginning" of his ownership. Given this record, Fowler did not establish an absence of factual dispute regarding when Miller's claims accrued under the discovery rule.

We conclude, based on this record, that "[r]easonable minds may differ" over whether Miller should have been aware that he had a potential cause of action against Fowler or that he should have begun an inquiry to protect his rights during the

critical two-year period.[27] Therefore, we cannot conclude as a matter of law that Miller's claims accrued during this time. We accordingly reverse the superior court's grant of summary judgment on the basis that the claims were barred by the statute of limitations,[28] and we remand for further proceedings.[29]

**B.      The Denial Of Miller's Wrongful Foreclosure Claim Was Based On An Erroneous Interpretation Of The Modification To The Sale Agreement.**

Miller also appeals the court's post-bench-trial order denying his wrongful foreclosure claim and related claims.[30] This denial was based on the superior court's interpretation of the third modification to the Agreement. "When interpreting a contract, [our] goal 'is to give effect to the reasonable expectations of the parties.' "[31]  We

---

[27]      *Pedersen v. Zielski*, 822 P.2d 903, 907 (Alaska 1991).

[28]      Because we reverse the grant of summary judgment on this basis, we do not address Miller's alternative equitable estoppel argument.

[29]      We note that on remand the superior court may wish to hold an evidentiary hearing on the statute of limitations issue. *Cf. John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1033 (Alaska 2002) (remanding "the statute of limitations issue to the superior court for determination as a preliminary question of fact" the question "whether the [plaintiffs] had sufficient information [during the relevant time period] to constitute inquiry notice under the discovery rule"). We have repeatedly encouraged that, before granting summary judgment on statute of limitation grounds, a trial court should hold an evidentiary hearing on factual issues to determine when a cause of action accrued. *See Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1278-79 (Alaska 2013); *Erkins v. Alaska Tr. LLC*, 265 P.3d 292, 301 (Alaska 2011); *Pederson*, 822 P.2d at 908.

[30]      The remaining claims were wrongful foreclosure, breach of contract, extinguishment of the loan under illusory promise and promissory estoppel, and slander of title.

[31]      *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 305 P.3d 309, 315 (Alaska 2013) (quoting *Villars v. Villars*, 277 P.3d 763, 768 (Alaska 2012)).

"ascertain[] the parties' reasonable intentions by looking 'to the language of the disputed provision and other provisions, relevant extrinsic evidence, and case law interpreting similar provisions.' "[32]  It is therefore "not necessary to find that an agreement is ambiguous before looking to extrinsic evidence as an aid in determining what it means."[33]  "Moreover, interpretation of a contract term does not take place in a vacuum, but rather requires consideration of the provision and agreement as a whole."[34]

The third modification provides for two changes to the Agreement: (1) "No payments of principal or interest on loan . . . until June 2013" and (2) "An additional credit of $80,000 to be deducted from loan [balance] upon completion certification of sewer upgrades as previously described by the 4 permits issued."  This modification followed two prior modifications, which had also deferred and reduced monthly payments on the note and reduced the principal on the note based on Miller's expenditures on the sewage repairs.  Each of these two prior modifications conditioned the reduction in principal — but not the deferment of payments — on Miller providing Fowler proof that repairs had been completed and inspected by December 20, 2012.

The superior court interpreted the third modification to implicitly contain the same December 20, 2012 deadline for *both* changes — the reduction in principal and deferment of payments.  However, the two prior modifications do not support this interpretation.  Neither of the two prior modifications require the December 20, 2012 repair deadline to be met in order for monthly payments to be deferred.  Rather, deferral

---

[32]     *Flint Hills Res. Alaska, LLC v. Williams Alaska Petroleum, Inc.*, 377 P.3d 959, 975 (Alaska 2016) (quoting *W. Pioneer, Inc. v. Harbor Enters., Inc.*, 818 P.2d 654, 656 (Alaska 1991)).

[33]     *Id.* (quoting *Estate of Polushkin ex rel. Polushkin v. Maw*, 170 P.3d 162, 167 (Alaska 2007)).

[34]     *Id.* (quoting *Mahan v. Mahan*, 347 P.3d 91, 95 (Alaska 2015)).

of monthly payments is unqualified. In both prior modifications, the December 20, 2012 repair deadline applies only to the reduction of the note balance. The prior modifications therefore do not indicate that the deferral of payment in the third modification was conditioned on any deadline.

Moreover, the superior court stated that extrinsic evidence could not be considered in interpreting a contract unless it was ambiguous. But a contract need not be ambiguous for a court to consider extrinsic evidence in its interpretation.[35] The case cited by the superior court involves the standard for deed interpretation, which prohibits a court from considering extrinsic evidence, rather than the standard for contract interpretation, which permits such consideration.[36] Given this error and the evidence contradicting the superior court's interpretation, we vacate the superior court's denial of Miller's wrongful foreclosure claim and related claims and remand these claims for reconsideration. On remand, the superior court should consider any available extrinsic evidence in interpreting the modification, including the testimony of the parties.

### C. The Superior Court Did Not Abuse Its Discretion In Denying Miller Leave To Amend His Complaint Mid-Trial.

Miller's final point on appeal challenges the superior court's denial of his motion to amend his complaint to assert the defense of unilateral mistake to Fowler's counterclaim for foreclosure.[37] This motion was made on the second day of the trial,

---

[35]     *Id.*

[36]     *See HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 726 (Alaska 2012).

[37]     Miller also urges that the superior court should have permitted him to amend his pleadings to include a request for contract reformation. However, Miller does not cite to where he requested such relief in the superior court, nor has our review of the trial transcript revealed any such request. The only basis upon which Miller moved to

(continued...)

right after Powell testified that the December 20, 2012 completion deadline had not been mentioned in any discussions with Fowler and that the date the parties had actually discussed was in 2013 rather than 2012.  The superior court denied the motion from the bench, stating: "It is so untimely.  It is so prejudicial now at the time of the second day of the trial.  It's never been pled.  It has never been the position of the plaintiffs since the beginning of this case.  I find it overly prejudicial."  Miller argues that this denial was an abuse of discretion because he raised a valid defense of unilateral mistake, the supporting facts of which came to light for the first time at trial.  Although Miller concedes his motion to amend "came late in the case," he argues that Fowler would not have been prejudiced by granting it because she would have still had the opportunity to cross-examine him.

Alaska Civil Rule 15(a) provides that after a responsive pleading has been served and the case has been set for trial, a party may amend a pleading only by leave of the court or by written consent of the adverse party.  It further provides that the superior court "shall . . . freely give[]" leave "when justice so requires."[38]  Even so, denial of leave to amend is justified in cases of "undue delay, bad faith or dilatory motive . . . [by] the movant," and, among other circumstances, "undue prejudice to the opposing party."[39] "In deciding whether the superior court has abused its discretion by denying a motion

_____

(...continued)
amend was unilateral mistake.  Accordingly, the superior court could not have abused its discretion in refusing to grant a motion that was never presented to it.  *See Parks v. Parks*, 214 P.3d 295, 304 (Alaska 2009) (holding trial court did not abuse discretion in failing to address argument not raised before it).

[38]     Alaska R. Civ. P. 15(a).

[39]     *Lingley v. Alaska Airlines, Inc.*, 373 P.3d 506, 512 (Alaska 2016) (first omission and alteration in original) (quoting *Patterson v. GEICO Gen. Ins. Co.*, 347 P.3d 562, 569 (Alaska 2015)).

to amend, we balance 'the possible prejudice to [the nonmoving party] in defending [the new] claims with the potential harm caused to [the moving party] if he is precluded from litigating these issues.' "[40]

Here, both Miller's undue delay and the undue prejudice the amendment could have caused to Fowler justified denial of the motion to amend. First, Miller delayed in moving to amend until the second day of trial, over two years after his complaint was filed and over four months after the last deadline for motions set in the pre-trial order. Although Miller claims delay was justified because the testimony serving as the basis for the motion was elicited for the first time at trial, he overlooks the fact that this testimony was offered by his wife. Given the source of this testimony, reasonable diligence could have elicited it well before the second day of trial.

Moreover, Fowler would be unduly prejudiced if this amendment were permitted. Generally, the further along a case has proceeded, the more likely prejudice to the nonmoving party will outweigh hardship to the moving party. For example, where a plaintiff moved to amend "about two months after she filed her first amended complaint," before discovery had commenced or a trial date had been set, the hardship to the plaintiff of denying the motion "outweigh[ed] any prejudice to [the opposing party]."[41] In contrast, where a motion to amend was filed approximately three weeks before the trial was set to begin and more than two years after the complaint was filed,

---

**40** *Patterson*, 347 P.3d at 569 (alterations in original) (quoting *Miller v. Safeway, Inc.*, 102 P.3d 282, 288 (Alaska 2004)).

**41** *Lingley*, 373 P.3d at 513; *see also Larson v. Benediktsson*, 152 P.3d 1159, 1163 (Alaska 2007) (affirming grant of motion to amend when it was filed "shortly after the sixty-day deadline for amending as a matter of right had expired").

we found undue prejudice based on the fact that the opposing party would not be able "to seek discovery or file a dispositive motion before the start of trial."[42]

Miller's motion presents an even more prejudicial scenario: it was not filed "on the eve of trial" but rather in the midst of the trial. Given its timing, Fowler would have had no opportunity to seek discovery or file a dispositive motion. Although Miller insists that Fowler would not have been prejudiced because she would have had the opportunity to cross-examine him, he cites no authority that this alone would be sufficient to eliminate prejudice. The superior court did not abuse its discretion in denying Miller's motion to amend his complaint to assert a defense of unilateral mistake.

## V.    CONCLUSION

We AFFIRM the denial of the motion to amend. We REVERSE the summary judgment order and we VACATE the order granting judgment in Fowler's favor on the remaining claims. We REMAND for further proceedings consistent with this opinion.

---

[42]    *McAnally v. Thompson*, 397 P.3d 322, 327 (Alaska 2017); *see also Red Elk v. McBride*, 344 P.3d 818, 823 (Alaska 2015) (affirming denial of leave to amend when motion filed over a year after complaint and a month before trial because it would be overly prejudicial to opposing party); *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 592 (Alaska 2007) (affirming denial of leave to amend when motion was filed "on the eve of trial"); *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 671 (Alaska 2002) (affirming superior court finding of undue prejudice when the motion to amend was filed seven weeks before trial).