NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| PATRICK H. TORRENCE, ) | |
| ) | Supreme Court No. S-18435 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-20-06511 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF CORRECTIONS, and ) | |
| COMMISSIONER JENNIFER ) | No. 2018 – March 13, 2024 |
| WINKELMAN, SUPERINTENDENT ) | |
| WILLIAM LAPINSKAS, OFFICER ) | |
| PERRY BAUER, OFFICER ) | |
| ANTHONY RIDGES, SERGEANT ) | |
| JEREMIAH WILMOTH, SERGEANT ) | |
| ERIC HIATT, SERGEANT JOSHUA ) | |
| KOMAREK, and OFFICER TERRY ) | |
| PHEASANT, in their official capacities, ) | |
| and TYLER BLUE, ) | |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge, and Frank A. Pfiffner, Judge pro tem.

Appearances: Patrick H. Torrence, pro se, Wasilla, Appellant. Aisha Tinker Bray, Assistant Attorney General, Fairbanks, and Treg R. Taylor, Attorney General, Juneau, for State Appellees. No appearance by Appellee Tyler Blue.

---

\* Entered under Alaska Appellate Rule 214.

-1- *2018*

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices. Carney, Justice, dissenting in part.

## I. INTRODUCTION

After being assaulted in his cell an inmate was charged with a disciplinary infraction and placed in administrative segregation. Several days later he was transferred to a different prison and the disciplinary charge was dismissed. Despite this he remained in administrative segregation for an additional 52 days.

The inmate sued the Department of Corrections (DOC), various DOC officers, and his assailant for multiple statutory and constitutional violations stemming from his assault and subsequent segregation. He claimed that DOC orchestrated his assault and then improperly segregated him as punishment. The superior court granted summary judgment in favor of all DOC defendants, and dismissed the suit against the assailant for failure of service. The inmate now appeals. Observing no error in the court's decisions, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

On July 15, 2019, Patrick Torrence was assaulted in his cell at Spring Creek Correctional Center. Surveillance video showed that another inmate, Tyler Blue, entered Torrence's cell and a physical altercation ensued. The altercation was documented in a prison incident report. Torrence required immediate medical attention.

Upon return to the prison Torrence was placed in administrative segregation. The stated reason was that he "[p]resent[ed] a substantial and immediate

threat to the security of the facility or public safety."[1] Initially, Torrence also received a "high-moderate infraction" for fighting.[2]

Three days later the prison held a mandatory classification hearing to review Torrence's placement in segregation.[3] The hearing officer first noted that the incident report concluded that Torrence had not been fighting, and classified the altercation as an "assault" perpetrated by Blue. He then informed Torrence that "based upon our conversation prior to going on the record . . . about the issues that have resulted in this assault, I am going to recommend that you remain in segregation for the time being and that this get further investigated and also that we take steps to investigate the possibility of [an] alternate facility for you." Torrence believed that he had been specifically targeted by a prison gang for informing DOC personnel about the gang's illegal activities. He also believed that DOC staff intentionally outed him to the gang as a confidential informant, precipitating the attack.

At the end of the hearing Torrence agreed with the hearing officer's assessment and stated, "I think you were pretty accurate in what you're saying and . . . just thinking a transfer is viable . . . under the circumstances of . . . the threat to public safety here and my person." Several days later, on July 23, Torrence was transferred to the Anchorage Correctional Complex but remained in administrative segregation. On July 30, the disciplinary charge against Torrence was officially dismissed.

A 30-day segregation review hearing was held on August 16.[4] Torrence waived his personal appearance. The review hearing officer recommended that

---

[1]     *See* 22 Alaska Administrative Code (AAC) 05.485(a)(8).

[2]     *See* 22 AAC 05.400(c)(1) (categorizing "fighting" as a "[h]igh-moderate infraction" of the conduct expected of prisoners in state facilities).

[3]     *See* 22 AAC 05.485(d).

[4]     *See id*.

Torrence remain in administrative segregation because he still presented "a substantial and immediate threat to the security of the facility or public safety." The officer set the next review date for September 13. On September 4 an Anchorage officer emailed Spring Creek asking why Torrence was in administrative segregation. Torrence had claimed that he was "waiting on a hearing with [Spring Creek]." In what appears to be a reply from Spring Creek, an officer indicated that Torrence was not waiting on a hearing at Spring Creek, and that Torrence's disciplinary charge that initially caused his segregation had been dismissed on July 30. Nonetheless Torrence remained in administrative segregation for another nine days, until September 13, for a total of 60 days.

## B. Proceedings

In May 2020 Torrence filed a civil case that alleged a variety of statutory and constitutional violations against the DOC, multiple DOC employees,[5] and his assailant Tyler Blue. Torrence's claims include allegations that DOC acted with gross negligence and deprived him of due process by placing him in administrative segregation without an appeal process, that he was improperly and illegally disciplined for fighting, that he was improperly held in administrative segregation in the Anchorage Jail and Cook Inlet Pre-Trial Facility for no reason or for punitive reasons, and that DOC personnel negligently, recklessly, or intentionally caused the assault that Torrence suffered at the hands of Blue. Torrence also claimed that various staff interfered with his constitutional rights in violation of AS 11.76.110,[6] or committed official

---

[5] The named DOC defendants were: The Commissioner of the Department of Corrections, Nancy Dahlstrom, the Superintendent of Spring Creek Correctional Center, William Lapinskas, and DOC officers Perry Bauer, Anthony Ridges, Jeremiah Wilmoth, Eric Hiatt, Joshua Komarek, and Terry Pheasant.

[6] Alaska Statute 11.76.110 is the class A misdemeanor of "interference with constitutional rights."

misconduct under AS 11.56.850.[7]  Torrence requested various amounts of money damages to compensate him for these alleged wrongs.

After answering the complaint, Commissioner Dahlstrom, Wilmoth, Ridges, Pheasant, and Hiatt all moved for dismissal under Alaska Civil Rule 12(b)(6).[8] The court granted the dismissal with respect to Dahlstrom, Pheasant, and Ridges, but denied dismissal for Wilmoth and Hiatt.[9]  The remaining defendants were DOC, individual DOC employees — Lapinskas, Bauer, Wilmoth, Hiatt, and Komarek — and Blue.

Little appears to have occurred in the case during much of 2021.[10]  Then in December 2021, more than 18 months after the complaint had been filed, DOC moved for summary judgment in its favor and in favor of all remaining employees. Included in its motion were prison disciplinary records and affidavits from Bauer, Wilmoth, Hiatt, and Komarek.  Torrence did not respond to DOC's motion for summary judgment, and the court granted summary judgment in favor of DOC and its employees on all claims.  Shortly after the case was dismissed Torrence requested an extension in order to depose witnesses, and also filed a variety of other motions.[11]

---

**7**     Alaska Statute 11.56.850 is the class A misdemeanor of "official misconduct."

**8**     Alaska Rule of Civil Procedure 12(b)(6) allows a motion to dismiss the case if the complaint fails to state a claim upon which relief can be granted.

**9**     Torrence does not appeal the dismissal of these defendants.

**10**     During this time Torrence moved for summary judgment.  The superior court denied his motion because he failed to establish that there were no genuine issues of material fact.

**11**     Torrence filed motions to declare Blue and Lapinskas served, to request judgment against Blue, to declare certain witnesses to be hostile, to assert assault and malicious prosecution on the basis of "organizational negligence," to add an additional defendant, to transfer venue, and to release certain medical records.

The court subsequently issued an order in April 2022 that vacated its prior order granting summary judgment, responded to all of the outstanding motions, and considered the pleadings and materials that had since been filed in once again deciding the summary judgment motion. The court again granted summary judgment in favor of DOC, reasoning that all of Torrence's claims against DOC arose from the intentional torts of assault, false imprisonment, or malicious prosecution and were therefore barred by sovereign immunity.[12]

The court further evaluated each of the claims against the individually named DOC employees and granted summary judgment in favor of each, some for failure of service and some for lack of evidence that they were involved in the challenged decision-making or the assault. It also determined that the two-week delay between the assault and the official dismissal of the disciplinary proceedings did not violate due process as a matter of law. Finally, the court dismissed Torrence's claims against Blue because it determined that Blue had not been properly served.

After prevailing on all claims DOC moved for attorney's fees. DOC claimed $55,725 in fees, provided an itemized list of hours worked and by whom, and requested an Alaska Civil Rule 82(b)(2) award of 20% of the fees incurred, or $11,145.[13] The court awarded the requested fees. In its final judgment the court noted that it had reviewed DOC's motion for attorney's fees and the accompanying affidavits, and found that "the requested attorney's fees were reasonably incurred as to the amount of time spent and rate requested."

---

[12]     AS 09.50.250(3) (barring all claims against the state or state agency for intentional torts that "arise[] out of assault, battery, false imprisonment, false arrest, [or] malicious prosecution.").

[13]     Rule 82(b)(2) requires courts to "award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred."

Torrence now appeals the dismissal of his case on summary judgment. He raises five points on appeal. Three of his appeal points concern his factual assertion that DOC and its employees orchestrated his assault, and then improperly segregated him in violation of his constitutional and statutory rights. This includes claims that his initial segregation was punitive and that his continued segregation after being transferred from Spring Creek violated his due process rights. He also argues that the superior court's decision to not award him compensatory damages for "improper administrative segregation" violated his due process rights and constituted an "interference with constitutional rights," a class A misdemeanor under AS 11.76.110.[14] His remaining appeal points contend that the court erred in dismissing Blue for lack of service and in awarding attorney's fees against him.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo and will affirm "if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[15] In determining whether any genuine issue of material fact exists, we "draw[] all factual inferences in favor of, and view[] the facts in the light most favorable to[,] the non-prevailing party."[16] "We may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."[17]

---

[14] Torrence does not appeal the superior court's rejection of his asserted claim under AS 11.56.850.

[15] *Miller v. Fowler*, 424 P.3d 306, 310 (Alaska 2018) (quoting *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012)).

[16] *Leahy v. Conant*, 436 P.3d 1039, 1043 (Alaska 2019) (quoting *Rockstad v Erikson*, 113 P.3d 1215, 1219 (Alaska 2015)).

[17] *Id.* (quoting *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015)).

Attorney's fee awards and procedural dismissals are reviewed for an abuse of discretion.[18] But factual findings surrounding service of process are reviewed for clear error.[19] Whether those facts meet the legal requirements for service of process is a legal question that is reviewed de novo.[20]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Granting Summary Judgment.

#### 1. The court did not err by granting summary judgment in favor of the individual DOC employees.[21]

Construing Torrence's complaint and appellate briefs liberally,[22] he argues that the officer that placed him in administrative segregation was negligent, that the reasons various officers provided for the segregation were fabricated or punitive,

---

[18]     *United Servs. Auto. Ass'n v. Pruitt ex rel. Pruitt*, 38 P.3d 528, 531 (Alaska 2001) (attorney's fees); *Gilbert v. Nina Plaza Condo Ass'n*, 64 P.3d 126, 128 n.1 (Alaska 2003) (procedural dismissals).

[19]     *See Sellers v. Kurdilla*, 377 P.3d 1, 7 (Alaska 2016).

[20]     *See Hertz v. Carothers*, 225 P.3d 571, 574-75 (Alaska 2010)*; see also In re Hospitalization of Linda M.*, 440 P.3d 168, 171 (Alaska 2019) (quoting *In re Hospitalization of Jacob S.*, 384 P.3d 758, 764 (Alaska 2016)).

[21]     We note, as did the superior court, that the attorney general did not provide a certification to substitute DOC as a "party defendant" for each individual DOC employee.  *See* AS 09.50.253(c) (requiring "certification by the attorney general" prior to substituting state as "party defendant").  The court properly considered each employee's case individually and refused to apply sovereign immunity to the claims against the individual officers.

[22]     *Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017) ("We apply a more lenient standard to pro se litigants" and "consider pro se pleadings liberally in an effort to determine what legal claims have been raised." (first quoting *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062-63 (Alaska 2005); and then quoting *Toliver v. Alaska State Comm'n for Hum. Rts*, 279 P.3d 619, 622 (Alaska 2012))).

and that various officers violated AS 11.76.110 in their handling of his segregation.[23] Torrence's complaint further alleges that at least one officer intentionally, recklessly, or negligently caused Torrence's assault by the gang. To the extent Torrence argues that the superior court erred in granting summary judgment in each individual officer's case, we disagree.[24]

In its motion for summary judgment DOC pointed to admissible evidence, including affidavits from each individual officer, attesting to facts that, if not contested, demonstrated entitlement to judgment in their favor. These affidavits all either deny Torrence's claims or assert no involvement in the decision to segregate him. The affidavits also attest to facts that, if not contested, undermine any claim that any of the officers were negligent or otherwise fell short of their individual duties. And Torrence did not point to any admissible evidence or submit his own affidavit to contest these affidavits.

Officer Bauer, the officer involved in Torrence's initial segregation, denied any punitive intent in segregating Torrence. His affidavit also corroborates the classification hearing transcript indicating that, at least initially, Torrence was segregated for his own protection and he agreed with the segregation decision. Officers Hiatt, Wilmoth, and Komarek all asserted that they were not part of the administrative segregation process. And all of the officers denied any involvement with Torrence once he left Spring Creek. As to Torrence's claim that an officer orchestrated his assault,

---

[23] Alaska Statute 11.76.110 defines the crime of "interference with constitutional rights." It is inapplicable here because Torrence filed a civil case, and this statute defines a criminal offense that cannot be asserted in a private cause of action. *See DeRemer v. Turnbull*, 453 P.3d 193, 198 (Alaska 2019) (explaining that statute does not include private cause of action). No evidence was presented that any of the DOC defendants in this civil case had been charged with or convicted of this crime.

[24] Torrence does not challenge the dismissal of claims against Lapinskas for failure of service.

Torrence's complaint levels this charge against Komarek. But Komarek's affidavit denied any such involvement.

In the face of this evidence the burden shifted to Torrence to provide admissible evidence that disputed or contradicted DOC's initial showing.[25] Torrence provided no affidavits or admissible evidence to contradict any of DOC's evidence.[26] Considering the difficulty in parsing Torrence's claims against each individual officer, and the fact that he failed to point to any admissible evidence to substantiate any of his claims, Torrence failed to raise a material issue of fact. Summary judgment in favor of the individual employees was proper.[27]

---

[25] " '[A] party seeking summary judgment has the initial burden of proving, through admissible evidence, that there are no [genuine] disputed issues of material fact and that the moving party is entitled to judgment as a matter of law.' Once the moving party has made that showing, the burden shifts to the non-moving party 'to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists.' " *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014) (citation omitted) (alterations in original) (first quoting *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760 n.25 (Alaska 2008); and then quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)).

[26] At best Torrence provided inadmissible hearsay to substantiate his claim that Sergeant Komarek had caused his assault by making disclosures to gang members. And Torrence makes no claim that his assault was caused by negligent supervision or improper procedures. Torrence's own statements during the initial classification hearing undermine his unsupported assertion that he was improperly segregated.

[27] In some instances, courts retain "an obligation to inform [a pro se] litigant of the proper procedure[s]." *Bush v. Elkins*, 342 P.3d 1245, 1253 (Alaska 2015) (citing *Breck v. Ulmer*, 745 P.2d 66, 74 (Alaska 1987)). But this obligation only goes so far. *Id.* Here, given the lack of clarity in Torrence's claims, the fact that the court had already vacated its prior grant of summary judgment to consider his opposition on the merits, and the fact that Torrence had over two years to marshal his evidence, the court did not err in granting summary judgment.

## 2. The court did not err by granting summary judgment in favor of DOC.

Turning to Torrence's allegations against DOC, he seems to argue — and his complaint could be interpreted to allege — that DOC was responsible for his assault through the actions of its officers. The complaint may also be read to assert that DOC officers acted either with negligence or intentionally to improperly place him in administrative segregation. Inasmuch as Torrence's complaint asserts a tort action alleging that DOC orchestrated his assault, and that he was then subsequently maliciously prosecuted or falsely imprisoned in administrative segregation, we agree with the superior court that these claims are barred by AS 09.50.250(3).

Alaska Statute 09.50.250 broadly waives state sovereign immunity against tort claims.[28] This waiver is subject to several exceptions, however, including any tort claim that "arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."[29] The court granted summary judgment in favor of DOC, reasoning that all of Torrence's claims arose from one of these intentional torts and was therefore barred by sovereign immunity. Torrence himself, in various filings, concedes that at least some of his claims "arise[] out of an assault," malicious prosecution, or false imprisonment. As to any of Torrence's claims that assert DOC is responsible for an intentional tort, summary judgment in favor of DOC was appropriate.

Torrence also appears to claim that DOC was negligent. Such a claim would not be barred by AS 09.50.250. But Torrence's negligence claims assert the same sets of facts outlined above: that the officers caused his assault and then improperly segregated him. And as discussed above, the superior court did not err in granting summary judgment in favor of each of those individually named officers. This

---

[28]  AS 09.50.250.

[29]  AS 09.50.250(3).

leaves no basis for a negligence claim against DOC, and Torrence's complaint avers no separate factual basis or harm supporting a viable claim of negligence. To the extent that Torrence's complaint could be read to assert negligence on the part of DOC, summary judgment in DOC's favor was appropriate.

It is possible that Torrence's complaint could be construed to assert that that DOC violated his state or federal right to due process and that the superior court should not have granted summary judgment with respect to such a claim. In particular, Torrence asserts that once he was transferred away from Spring Creek and his disciplinary charge was dropped, DOC had no justification to keep him segregated. This would arguably make his continued segregation arbitrary, thereby violating his due process rights. DOC would not enjoy sovereign immunity from such a claim.[30] However, to the extent that Torrence makes this claim, we must reject it.

We have previously held that we "will not allow a constitutional claim for damages, 'except in cases of flagrant constitutional violations where little or no alternative remedies are available.' "[31] We have further indicated that 42 U.S.C. § 1983 often serves as an adequate "alternative remedy" even if success under § 1983 is procedurally blocked or unlikely.[32]

To the extent Torrence raises constitutional claims, his complaint makes clear that he does so in pursuit of damages. In fact, one of his filings in support of this case is titled "Suggested Brakedown [sic] in Damages Compensatory, Punitive." This filing provides a detailed accounting of the money Torrence believes he is owed for the alleged violations. Torrence's complaint and appeal briefs contain similar requests for various money damages.

---

[30]     *See* 42 U.S.C. § 1983.

[31]     *Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005) (quoting *Dick Fisher Dev. No. 2, Inc. v. State, Dep't of Admin.*, 839 P.2d 263, 268 (Alaska 1992)).

[32]     *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1096-98 (Alaska 2012).

To the extent, then, that Torrence's complaint states constitutional claims associated with his administrative segregation, it is clear that he is asserting those claims for money damages. And because he has alternate federal remedies to vindicate his rights under the federal constitution, we will not allow such claims under the Alaska Constitution.[33]

As far as Torrence's remedies and rights under the United States Constitution, we acknowledge that § 1983 "allows claims against state officials for violations of the U.S. Constitution, not state constitutions."[34] But to prevail on a federal substantive due process claim for money damages Torrence would need to prove that a state official's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[35] Torrence's claims are centered on his allegations that DOC caused his assault and then improperly segregated him. But as already discussed, Torrence has failed to raise a material issue of fact concerning his initial segregation and the associated events at Spring Creek. The only other facts Torrence cites are that he remained in segregation after leaving Spring Creek and after his disciplinary charge was officially dismissed.[36] Even taken as true, the facts

---

[33]     *Id.* Regardless of the viability of his federal remedies, the "existence of the remedy itself is enough to block a [constitutional claim for money damages], even if procedurally that remedy is no longer available." *Id.* at 1098.

[34]     *Id.* at 1096.

[35]     *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020); *accord Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023).

[36]     Here Torrence's disciplinary charge was dismissed on July 30, 2019; however, the record reflects difficulty in communication of that dismissal to the Anchorage Correctional Complex. An Anchorage DOC officer was notified on September 4 that Torrence's disciplinary charge had been dismissed, and Torrence was transferred out of administrative segregation on September 13.

established in Torrence's case do not establish the type of outrageous behavior contemplated in a § 1983 claim.[37]

Although the superior court did not contemplate that Torrence may be asserting this type of constitutional claim when it granted summary judgment against him, any such claim under the Alaska Constitution is not permitted.[38] And Torrence's showing in support of a claim brought under the federal constitution is insufficient to survive summary judgment. Assuming Torrence's complaint could be read to assert

---

[37] *See, e.g.*, *Diaz v. State, Dep't of Corr.*, 239 P.3d 723, 729-31 (Alaska 2010) (holding subjecting inmate on electronic monitoring to a custodial interrogation by her former employer without notifying her of her constitutional rights did not shock the conscience and one day of administrative segregation did not violate her Fourteenth Amendment liberty interests); *cf. Vazquez*, 949 F.3d at 1162-63 (finding that inmate's allegations that corrections officer groomed her for sex, touched her without consent, and made sexual advances sufficiently pled egregious enough conduct to survive summary judgment); *Fontana v. Haskin*, 262 F.3d 871, 875, 880-82 (9th Cir. 2001) (finding woman's allegations that police officer touched her without consent and made sexual advances while she was handcuffed in back of police car sufficiently pled egregious enough conduct to survive summary judgment). We do not reach the issue of whether holding an individual in administrative segregation for a longer period of time or in a different context could provide the basis for a viable § 1983 claim.

[38] Although Torrence lacks a viable claim under our state constitution, we are troubled by the apparent lack of communication and responsiveness when the basis for placement in administrative segregation (Torrence's disciplinary charge) was determined to have been dismissed. We have recently emphasized the significant harm that may occur when an individual remains in administrative segregation for an extended period and is denied procedural due process rights. *See Watkinson v. State, Dep't of Corr.*, 540 P.3d 254, 266-72 (Alaska 2023) (reversing superior court's determination as threshold matter on summary judgment that prisoner held in administrative segregation for over 500 days had not set forth evidence of sufficiently egregious conduct by State or severe enough emotional distress to sustain claim for intentional infliction of emotional distress).

these types of constitutional claims, we see no error in the superior court's grant of summary judgment to DOC.**39**

B. **The Superior Court Did Not Abuse Its Discretion In Dismissing The Case Against Blue Without Prejudice.**

Torrence claims that the court abused its discretion when it dismissed his case against Blue, without prejudice to refile it, for failure of service. But Torrence does not provide any specific reason for how or why this decision was made in error. To the extent Torrence asserts that Blue was, in fact, properly served, we disagree.

In dismissing the claims against Blue, the superior court referenced the requirements of AS 09.05.050 and Alaska Civil Rule 4. It pointed out that "courts 'must insist on strict compliance' when it comes to service requirements," and then found that Torrence had not followed either provision.**40** Additionally, the court noted that Torrence's "one deficient attempt" to serve Blue did not constitute good cause for it to extend the service deadline. The court ultimately dismissed the case against Blue without prejudice.

To serve process on an inmate, AS 09.05.050 requires the summons and complaint to be delivered, "together with a form for affidavit of proof of service, to the shift supervisor of the correctional facility in which the person is housed."**41** Similarly, service by mail under Rule 4 requires the summons and complaint to be sent "by registered or certified mail, with return receipt requested" and to be mailed "restricted

---

**39** Torrence also asserts that the court erred by denying his request for compensatory damages for improperly segregating him. But as DOC points out, the court could not have erred in failing to award damages, as this case was dismissed on summary judgment and never reached a point at which damages could be awarded. We therefore reject this argument.

**40** *Hertz v. Carothers*, 225 P.3d 571, 575 (Alaska 2010) (refusing to carve exception into proof of service requirements even when party had actual notice of suit, and stating that "strict compliance" is required).

**41** AS 09.05.050(a).

delivery."[42] Our review of the record confirms that the affidavit form required under AS 09.05.050 was not completed, and Torrence's showing that he served Blue by mail is inconsistent and ambiguous.[43] Given this the court did not clearly err in finding that Torrence had not taken the steps necessary to serve Blue. In addition, given that Torrence had two years in which to serve Blue and made only one insufficient attempt at service during that time, and that he presented no argument in support of good cause extension of the service deadline, it was not an abuse of discretion for the court to dismiss the claims against Blue, without prejudice to refile, for failure of service.[44] We thus affirm these aspects of the court's order.

### C. The Superior Court Did Not Err In Awarding Attorney's Fees.

Torrence claims that the court erred in its award of attorney's fees to DOC pursuant to the Rule 82 schedule. But he provides no legal basis for his argument; nor does he explain why the award was wrong. Although the court may have been within

---

[42]     Alaska R. Civ. P. 4(h).

[43]     Torrence provided certified mail receipts as proof of his service of Blue. But the receipts do not clearly indicate that the package was sent restricted delivery. Although the certified mail receipt contains blank squares next to "Return Receipt" and "Restricted Delivery," the delivery receipt indicates that "Service Type" was "Return Receipt" and "Signature Confirmation Restricted Delivery," but "Certified Mail" was not selected.

[44]     We observe that the superior court could have provided Torrence with more information about the procedural steps that he appeared to be attempting to accomplish. *See Bush v. Elkins*, 342 P.3d 1245, 1253 (Alaska 2015). Although Torrence made a seemingly good faith (but deficient) effort to serve Blue in August 2020, it was not until January 2022 that the superior court notified Torrence that both Blue and Lapinskas had not been properly served. While this notice did inform Torrence that he must "show good cause in writing why service is not complete" pursuant to Civil Rule 4(j), it did not inform Torrence of the reason why his service of Blue was deficient. Given that the dismissal was without prejudice, though, and given that Torrence did not seek an extension of time to accomplish service, we conclude the court did not abuse its discretion. Indeed, Torrence indicates in his briefing that he has already filed another civil suit against Blue based on the same assault.

its discretion to reduce or deny such an award due to hardship or other equitable factors,[45] it was not an abuse of discretion to make the standard award, particularly where Torrence did not argue below, or to us, that the award should be varied.[46] And given that Torrence's complaint is for money damages, any contention that he qualifies as a constitutional claimant lacks merit.[47] We thus affirm the court's attorney's fee award.

## V.   CONCLUSION

We AFFIRM the superior court's orders in this case.

---

[45]   *See* Alaska R. Civ. P. 82(b)(3) (allowing court to vary standard award for various reasons); *Israel v. State, Dep't of Corr.*, 460 P.3d 777, 786 (Alaska 2020) ("While a court 'may vary an attorney's fee award' based on several factors, variation is not mandatory and the court is not required to explain why it has chosen *not* to modify the award." (emphasis in original) (first quoting Alaska R. Civ. P. 82(b)(3); and then citing *City of Kodiak v. Kodiak Pub. Broad. Corp.*, 426 P.3d 1089, 1095 (Alaska 2018))).

[46]   Torrence argues that he should not owe the State attorney's fees because the State owes him more in damages. But as discussed above, Torrence has no viable damages claims.

[47]   AS 09.60.010(c) (prohibiting attorney's fee awards against constitutional claimants that bring non-frivolous claims and do not have "sufficient economic incentive" to bring claim). A suit solely to recover damages necessarily reflects a sufficient economic incentive for bringing suit, regardless of the constitutional nature of involved claims. *See Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 281-84, 286 (Alaska 2015) (explaining litigant has sufficient economic incentive if primary purpose of suit is to advance litigant's direct economic interest).

CARNEY, Justice, dissenting in part.

I respectfully dissent from the court's decision to affirm the award of $11,145 attorney's fees from Torrence to DOC. I would vacate the award as an abuse of the court's discretion.

Torrence is an inmate at Goose Creek Correctional Center who is representing himself. He sued DOC after he was attacked in his cell by another inmate and was injured sufficiently that he required medical attention. When he filed this appeal he sought and was granted a reduced filing fee of $11 instead of the usual $250 and a waiver of the $750 cost bond because he is indigent. There is nothing in the record that indicates that his indigent status has changed.

We only reverse attorney's fees when the award is "manifestly unreasonable."[1] Awards made pursuant to Civil Rule 82 are presumptively valid, and I recognize that we have affirmed sizable attorney's fees awards against other inmates.[2] Because the record indicates that Torrence continues to be an indigent inmate, I believe that ordering an inmate who was unable to pay the filing fee in this case to pay thousands of dollars to DOC is manifestly unreasonable as well as futile.

---

[1] *Greene v. Tinker*, 332 P.3d 21, 41 (Alaska 2014) (citing *Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 157 (Alaska 2012)).

[2] *See, e.g.*, *Israel v. State, Dep't of Corr.*, 460 P.3d 777, 786 (Alaska 2020); *Achman v. State*, 323 P.3d 1123, 1131 (Alaska 2014).